# **<u>EXHIBIT 2</u>**

Dockets.Justia.com

FILED-CLERK
U.S. DISTRICT COURT

04 JUN -8 AM 9: 52

TEXAS-EASTERN

BY *M.Velvin*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| FIRST DATA CORPORATION, | § | CIVIL ACTION NO. 5:03-CV-00039 |
| FIRST DATA MERCHANT SERVICES | § | |
| CORPORATION, | § | |
| TELECHECK SERVICES, INC. *d/b/a* | § | |
| TELECHECK INTERNATIONAL, INC., | § | |
| and MICROBILT CORPORATION, | § | |
| *Defendants.* | § | |

## THE FIRST DATA DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH THE DOCKET CONTROL ORDER [DOCKET NO. 25]

**I.    INTRODUCTION**

This Court's August 21, 2002 Docket Control Order[1] commands Plaintiff DataTreasury

Corporation to provide "a chart identifying specifically where each element of each asserted

claim is found within each Accused Instrumentality ..."[2] Under the Order, Plaintiff's

infringement contentions were due no later than August 28, 2002. It is now May of 2004.

Plaintiff has engaged in gamesmanship in dismissing this case and refiling in another forum.

Nearly 2 years have passed, and Plaintiff's change in lead counsel has further delayed this action.

Through all of this, Plaintiff continues to ignore its disclosure obligations.

Plaintiff's problematic document production, its failure to provide adequate interrogatory

---

[1] Docket No. 25, Docket Control Order (August 21, 2002), attached as Exhibit A.
[2] Exhibit A at Patent L.R. 3-1(c) [Docket No. 25].

THE FIRST DATA DEFENDANTS' MOTION TO COMPEL COMPLIANCE
WITH THE DOCKET CONTROL ORDERS [DOCKET NO. 25] – PAGE 1

answers,[3] and its refusal to comply with this Court's Docket Control Order prejudice the First

Data Defendants in their effort to dispose of Plaintiff's meritless claims. Time and again,

Plaintiff has disregarded its obligations under the Rules of this Court, the Rules of Procedure,

and Federal Circuit precedents. The First Data Defendants move the Court to compel

DataTreasury's compliance with the August 21, 2002 Docket Control Order.

## II.    ARGUMENT

### A. Plaintiff Fails to Identify Each Claim Element Within Each Accused Instrumentality.

DataTreasury served documents entitled "Plaintiff's First Amended Disclosure of

Asserted Claims and Preliminary Infringement Contentions" and "Plaintiff's First Supplemented

Disclosure of Asserted Claims and Preliminary Infringement Contentions" on October 21, 2002

and April 1, 2004, respectively. These documents identified two things: the claims Plaintiff is

asserting and the accused products.[4] This is where the disclosures end. But the Docket Control

Order, Patent Local Rules and Federal Rules require much more. Under the Court's Order,

Plaintiff was required to disclose more:

> ...
>
> (c)   A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or materials(s) in the Accused Instrumentality that performs the claimed function;

---

[3] Concurrent with this motion, the First Data Defendants are filing a Motion to Compel Compliance Responses to Interrogatories.

[4] Plaintiff's October, 2002 Contentions only charge the ECA service with infringement. On April 1, 2004, DataTreasury alleged, for the first time, that a Check Imaging Archive Project ("CIAP") also infringes. Defendants are attempting to evaluate these assertions. The inadequacy of the Plaintiff's infringement contentions, however, is hindering this process.

(d)   Whether each element of each asserted claim is claimed to be literally
present or present under the doctrine of equivalents in the Accused
Instrumentality . . .[5]

The disclosures were due approximately 20 months ago.  Despite the Court's Order, Plaintiff

failed to explain how the Electronic Check Acceptance ("ECA") service or the Check Imaging

Archive Project ("CIAP") infringe any of the asserted claims.  DataTreasury's continued failure

to provide meaningful infringement contentions exposes a simple fact: it has no basis for

asserting infringement.

### B. Nowhere in the Accused Instrumentality is there "encrypted subsystem identification information and encrypted paper transfer data."

A primary example of Plaintiff's deficiency is its failure to show how the First Data

Defendants provide **encryption**, as it is called for in the claims.  A common element to every

claim in the '137 patent and most claims in the '988 patent is the requirement that the Accused

Instrumentality contain a "data access subsystem" that provides "**encrypted** subsystem

identification information and encrypted paper transaction data"[6] or the step of "**encrypting**

subsystem identification information and the transaction data."[7]

The terminals in the accused ECA service – the First Data Defendants' Eclipse and

Accelera terminals[8]—do not encrypt.  DataTreasury has had 17 months to study information

produced by the First Data Defendants (including source code for the Eclipse terminal), but it has

been unable to show encryption anywhere within the Eclipse or Accelera terminals or to identify

any component that even arguably performs this function.  Instead, Plaintiff merely makes the

---

[5] Exhibit A at Patent L.R. 3-1(c) and (d) [Docket No. 25].
[6] U.S. Patent No. 6,032,137, claims 1-25 and 42; U.S. Patent No. 5,910,988, claims 1-25 (emphasis added).
[7] U.S. Patent No. 6,032,137, claims 26-41 and 43; U.S. Patent No. 5,910,988, claims 26-41 (emphasis added).
[8] The Eclipse terminals are the First Data point of sale terminals used in the ECA service.

conclusory assertion that each claim limitation is present in the accused services.[9]

DataTreasury's disclosures fail to satisfy either this Court's Order or Plaintiff's own pre-filing

investigation obligations.

It is hornbook law that a claim cannot be infringed unless every limitation within it is

present within the accused apparatus, product, device, process, method or act: "To prove literal

infringement, the patentee must show that the accused device contains every limitation in the

asserted claims."[10] To establish a prima facie infringement case, Plaintiff must identify within

the Accused Instrumentality every limitation in at least one of the asserted claims.

### C.  Plaintiff has Failed to Address the Defects in its Infringement Contentions

The Court's Docket Control Order and Patent Local Rules require DataTreasury to read

the claims it asserts on the Accused Instrumentality.  The requirement is not new.  Federal

Circuit precedents show this is a necessary part of any pre-filing investigation:

> Before filing ... [claims for] patent infringement, Rule 11, we think, must be
> interpreted to require the law firm to, at a bare minimum, apply the claims of each
> and every patent that is being brought into the lawsuit to an accused device and
> conclude that there is a reasonable basis for a finding of infringement of at least
> one claim of each patent so asserted.[11]

The Rules adopted by this Court's Docket Control Orders enhance, rather than minimize,

Plaintiff's disclosure obligations.

---

[9]  Plaintiff's First Supplemented Disclosure of Asserted Claims and Preliminary Infringement Contentions, sample
pages (entire document included on disk) attached as Exhibit B.
[10] *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998).
[11] *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).

For nearly 19 months,[12] and through at least 9 separate written communications with Plaintiff's present and former counsel, the First Data Defendants have tried to secure Plaintiff's compliance with this Court's Order and the Federal Rules: e.g., "your suggestion to have this case decided on the merits is welcomed … It would help matters if your client would supplement its infringement contentions … [so] the First Data Defendants may learn why they have been sued."[13] These efforts proved unsuccessful.  It is long past time for Plaintiff to provide its infringement contentions.

## III.    CONCLUSION

It has now been almost two years since Plaintiff first accused the First Data Defendants of patent infringement, and DataTreasury is still unable to explain how the Accused Instrumentality can infringe any of the asserted claims.  The failure is inexcusable in view of the Court's Order and Plaintiff's obligations under the Federal Rules.  The Court should compel DataTreasury's compliance with the Docket Control Order in all respects, including having Plaintiff supplement its First Supplemented Disclosure of Asserted Claims and Preliminary Infringement Contentions to comply with P. R. 3-1.

---

[12] Initial Letter from James P. Bradley to Michael W. Shore of September 6, 2002.

[13] Letter from James P. Bradley to Michael W. Shore of December 2, 2002, attached as Exhibit C; see also letter from Li Chen to Rod Cooper of March 10, 2004, attached as Exhibit D. ("The First Data Defendants would like to have this case decided on the merits. But that is difficult to do when we have no clue why Plaintiff believes any of the First Data Defendants infringe. ..Plaintiff's claim charts contain no specific identification of 'where each element of each asserted claim is found within each Accused Instrumentality.'")

Respectfully submitted,

ATTORNEYS FOR DEFENDANTS
FIRST DATA CORPORATION,
FIRST DATA MERCHANT SERVICES CORP.,
AND TELECHECK SERVICES, INC.
D/B/A TELECHECK INTERNATIONAL, INC.

JAMES P. BRADLEY, ATTORNEY-IN-CHARGE
Texas Bar No. 02826000
LI CHEN
Texas Bar No. 24001142
SIDLEY AUSTIN BROWN & WOOD, L.L.P.
717 North Harwood, Suite 3400
Dallas, Texas 75201
tel. 214-981-3300
fax 214-981-3400

EDWARD G. POPLAWSKI (*Pro Hac Vice*)
JEFFREY A. FINN (*Pro Hac Vice*)
SIDLEY AUSTIN BROWN & WOOD, L.L.P.
555 W. Fifth Street
Los Angeles, California 90013
tel. 213-896-6000
fax 213-896-6600

DAMON YOUNG
Texas Bar No. 22176700
LANCE LEE
Texas Bar No. 240004762
YOUNG, PICKETT & LEE, L.L.P.
4122 Texas Blvd.
P.O. Box 1897
Texarkana, Texas 75504
tel. 903-794-1303
fax 903-792-5098

### CERTIFICATE OF CONFERENCE

The undersigned certifies that on June 7, 2004, he conferred with opposing counsel (Mr. Rod Cooper) in a good faith attempt to resolve the matter without court intervention. This motion is opposed.

Dated: _____June 7, 2004_____          _____
                                            Li Chen


### CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been forwarded to counsel of record on ____June 7____, 2004 as follows:


**VIA FEDERAL EXPRESS (with attachments)
& FACSIMILE (without attachments):**
Edward L. Hohn, Esq.
**NIX, PATTERSON & ROACH, L.L.P.**
205 Linda Drive
Daingerfield, TX  75638

**VIA FEDERAL EXPRESS (with attachments)
& FACSIMILE (without attachments):**
Joe Kendall, Esq.
**PROVOST-UMPHREY LAW FIRM, L.L.P.**
3232 McKinney Ave.
Suite 700
Dallas, TX 75204

**VIA FEDERAL EXPRESS (with attachments)
& E-MAIL (without attachments):**
Rod Cooper, Esq.
**THE COOPER LAW FIRM**
5221 N. O'Connor Blvd.
Suite 830
Irving , TX  75039

_____

EOD AUG 2 1 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

02 AUG 21  PM 2: 03

BY: M.Velvin

DATATREASURY CORPORATION    §
                            §
VS.                         §        5:02CV94
                            §
FIRST DATA CORPORATION, ET AL  §

## DOCKET CONTROL ORDER

Pursuant to the Court's authority under Federal Rules of Civil Procedure 16 and 26, the

Court ORDERS that the parties comply with the Proposed Patent Local Rules, attached hereto

as Exhibit 1, and the following timetable:

### TIMETABLE

| STEP | ACTION | RULE | DEADLINE | DATE DUE |
|------|--------|------|----------|----------|
| 1 | Initial Case Management Conference | Patent L.R. 2-1 FRCP 26(f) | *Nota Bona*: Be sure to hold Rule 26(f) conference "as soon as practicable and in any event at least 21 days before a scheduling conference is held or a scheduling order is due under Rule 16(b)" | 08/14/02 |
| 2 | Patentee serves Disclosure of Asserted Claims and Preliminary Infringement Contentions | Patent L.R. 3-1 | Step 1 + 10 days | 08/28/02 |
| 3 | Patentee makes Document Production Accompanying Disclosure | Patent L.R. 3-2 | Same as Step 2 | 08/28/02 |

*Datatreasury v First Data*
*Docket Control Order*

Page -1-





15:59 AUG 21, 2002    TEL NO: 590-1015    #207887  PAGE: 3/21

| 4 | Case Management Statement | Patent L.R. 2-1 FRCP 26(f) | Step 1 + 14 days | 08/28/02 |
|---|---|---|---|---|
| 5 | Accused Infringer serves Preliminary Invalidity Contentions | Patent L.R. 3-3 | Step 2 + 45 days | 10/07/02 |
| 6 | Accused Infringer makes Document Production Accompanying Preliminary Invalidity Contentions | Patent L.R. 3-4 | Same as Step 5 | 10/07/02 |
| 7 | All parties make Exchange of Proposed Terms and Claim Elements for Construction | Patent L.R. 4-1(a) | Step 5 + 10 days | 10/22/02 |
| 8 | All parties meet and confer to discuss list of Proposed Terms and Claim Elements for Construction | Patent L. R. 4-1(b) | After Step 7 | After 10/22/02 |
| 9 | All parties make Exchange of Preliminary Claim Constructions and Extrinsic Evidence | Patent L. R. 4-2 | Step 7 + 20 days | 11/12/02 |
| 10 | All parties meet and confer to discuss Preliminary Claim Constructions and Extrinsic Evidence | Patent L. R. 4-2(c) | After Step 9 | After 11/12/02 |
| 11 | All parties jointly file Joint Claim Construction and Prehearing Statement | Patent L. R. 4-3 | Step 5 + 60 days | 12/06/02 |
| 12 | Completion of Claim Construction Discovery | Patent L. R. 4-4 | Step 11 + 30 days | 01/06/03 |
| 13 | Patentee files opening claim construction brief | Patent L. R. 4-5(a) | Step 11 + 45 days | 01/21/03 |
| 14 | Accused Infringer files responsive claim construction brief | Patent L. R. 4-5(b) | Step 13 + 14 days | 02/04/03 |

| 15 | Patentee files reply brief on claim construction | Patent L. R. 4-5(c) | Step 14 + 7 days | 02/13/03 |
|---|---|---|---|---|
| 16 | Claim Construction Hearing | Patent L. R. 4-6 | Step 15 + 2 weeks | 02/27/03 |
| 17 | Court's Claim Construction Ruling | | | 03/10/03 |
| 18 | Patentee makes Final Infringement Contentions | Patent L. R. 3-6(a) | Step 17 + 30 days | 04/09/03 |
| 19 | Completion of Invalidity Discovery | Patent L.R. 5-1 | Step 17 + 45 days | 04/24/03 |
| 20 | Accused Infringer serves Preliminary Unenforceability Contentions | Patent L.R. 6-2 | Step 17 + 45 days | 04/24/03 |
| 21 | Accused Infringer makes Document Production Accompanying Preliminary Unenforceability Contentions | Patent L.R. 6-3 | Same as Step 20 | 04/24/03 |
| 22 | Accused Infringer makes Final Invalidity Contentions | Patent L.R. 3-6(b) | Step 17 + 50 days | 04/29/03 |
| 23 | Accused Infringer makes disclosure relating to willfulness | Patent L.R. 3-8 | Step 17 + 50 days | 04/29/03 |
| 24 | File summary judgment motions on invalidity | Patent L.R. 5-2 | Step 22 + 15 days | 05/14/03 |
| 25 | Completion of Unenforceability Discovery | Patent L.R. 6-5 | Step 20 + 30 days | 05/27/03 |
| 26 | File responsive briefs to summary judgment motions on invalidity | Patent L.R. 5-2 | Step 24 + 14 days | 05/28/03 |
| 27 | Accused Infringer makes Final Unenforceability Contentions | Patent L.R. 6-4 | Step 25 + 10 days | 06/10/03 |

*Datatreasury v First Data*
*Docket Control Order*                     Page -3-

16:00 AUG 21, 2002                    TEL NO: 590-1015              #207887  PAGE: 5/21

| 28 | File reply briefs regarding summary judgment motions on invalidity | Patent L.R. 5-2 | Step 26 + 7 days | 06/06/03 |
|----|----|----|----|----|
| 29 | File summary judgment motions on unenforceability | Patent L.R. 6-6 | Step 27 + 15 days | 06/25/03 |
| 30 | File responsive briefs to summary judgment motions on unenforceability | Patent L.R. 6-6 | Step 29 + 14 days | 07/09/03 |
| 31 | File reply briefs regarding summary judgement motions on unenforceability | Patent L.R. 6-6 | Step 30 + 7 days | 07/18/03 |
| 32 | Parties file amended pleadings | | | 07/21/03 |
| 33 | Parties make final designations of all expert witnesses | | | 07/25/03 |
| 34 | Completion of all remaining fact discovery | | | 07/25/03 |
| 35 | Completion of all remaining expert discovery | | | 08/08/03 |
| 36 | Patentee identifies trial witnesses | | | 08/11/03 |
| 37 | Accused Infringer identifies trial witnesses | | | 08/15/03 |
| 38 | Deadline for filing all dispositive and *Daubert* motions | | | 08/18/03 |
| 39 | Deadline for filing responses to dispositive and *Daubert* motions | | | 08/25/03 |

16:00 AUG 21, 2002          TEL NO: 590-1015          #207887 PAGE: 6/21

| 40 | Parties to file Proposed Joint Final Pretrial Order that includes Proposed Jury Instructions, Joint Verdict Forms & Motions in *Limine** | | | 08/27/03 |
|----|---|---|---|---|
| 41 | Final Pretrial Conference before Judge David Folsom | | | 08/28/03 |
| 42 | Jury selection | | | 09/09/03 |

The Court further ORDERS that the parties comply with the following additional

provisions:

If a party intends to rely upon expert testimony in support of any pleading filed before

the deadline for serving expert reports, then that party must: 1) designate the expert(s) to be

relied upon and the issue(s) the expert(s) shall testify on at least 14 days before the pleading is

filed; and 2) serve an expert report pursuant to Federal Rule of Civil Procedure 26(a)(2) on the

issue(s) the expert(s) shall testify on at the same time the pleading is filed. A nonexclusive list

of pleadings that this provision applies to includes all claim construction briefs, summary

judgment motions and related pleadings on invalidity, summary judgment motions and related

pleadings on unenforceability, all Federal Rule of Civil Procedure 12 motions and related

pleadings.

The Court will permit fifty (50) interrogatories instead of the twenty-five (25)

interrogatories currently permitted by Fed.R.Civ.P. 33.

*Prior to the pre-trial conference, the parties shall confer with each other regarding the

other party's Motion in Limine and shall submit to the Court in writing any objections they may

*Datatreasury v First Data*
*Docket Control Order*                      Page -5-

have to the other party's Motion in Limine.

It is finally, ORDERED that this Docket Control Order shall not be modified except by leave of Court upon showing of good cause, and shall be binding on all parties.

SIGNED this 21ˢᵗ day of August , 2002

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE

*Datatreasury v First Data*
*Docket Control Order*                    Page -6-

16:01 AUG 21, 2002          TEL NO: 590-1015          #207887 PAGE: 8/21

1

16:01 AUG 21, 2002                TEL NO: 590-1015              #207887  PAGE: 9/21

# PROPOSED PATENT LOCAL RULES
### TABLE OF CONTENTS

1.  SCOPE OF RULES.................................................................. 2
    1-1.  Title.................................................................... 2
    1-2.  Scope and Construction.................................................. 2
    1-3.  Effective Date.......................................................... 2
2.  GENERAL PROVISIONS............................................................ 3
    2-1.  Governing Procedure..................................................... 3
    2-2.  Confidentiality......................................................... 3
    2-3.  Certification of Initial Disclosures.................................... 4
    2-4.  Admissibility of Disclosures............................................ 4
    2-5.  Relationship to Federal Rules of Civil Procedure........................ 4
3.  PATENT INITIAL DISCLOSURES.................................................... 5
    3-1.  Disclosure of Asserted Claims
          and Preliminary Infringement Contentions................................ 5
    3-2.  Document Production Accompanying Disclosure.............................. 5
    3-3.  Preliminary Invalidity Contentions...................................... 6
    3-4.  Document Production Accompanying
          Preliminary Invalidity Contentions...................................... 7
    3-5.  Disclosure Requirement in Patent Cases for Declaratory Judgment......... 7
    3-6.  Final Contentions....................................................... 8
    3-7.  Amendment to Contentions................................................ 8
    3-8.  Willfulness............................................................. 8
4.  CLAIM CONSTRUCTION PROCEEDINGS................................................ 9
    4-1.  Exchange of Proposed Terms and Claim Elements for Construction.......... 9
    4-2.  Exchange of Preliminary Claim Constructions and Extrinsic Evidence...... 9
    4-3.  Joint Claim Construction and Prehearing Statement....................... 9
    4-4.  Completion of Claim Construction Discovery.............................. 10
    4-5.  Claim Construction Briefs............................................... 10
    4-6.  Claim Construction Hearing.............................................. 10
5.  PROCEEDINGS ON CLAIMS OF PATENT INVALIDITY................................... 11
    5-1.  Completion of Invalidity Discovery...................................... 11
    5-2.  Federal Rule of Civil Procedure 56 Motions on Invalidity................ 11
6.  PROCEEDINGS ON CLAIMS OF PATENT UNENFORCEABILITY............................. 12
    6-1.  Applicability of Rule................................................... 12
    6-2.  Preliminary Unenforceability Contentions................................ 12
    6-3.  Document Production Accompanying
          Preliminary Unenforceability Contentions................................ 12
    6-4.  Final Unenforceability Contentions...................................... 13
    6-5.  Completion of Unenforceability Discovery................................ 13
    6-6.  Federal Rule of Civil Procedure 56 Motions on Unenforceability.......... 13

EXHIBIT 1, PAGE 1

# 1. SCOPE OF RULES

**1-1.    Title.**

These are the Local Rules of Practice for Patent Cases before the United States District Court for the Eastern District of Texas.  They should be cited as "Patent L.R. __."

**1-2.    Scope and Construction.**

These rules apply to all civil actions filed in or transferred to this Court that allege infringement of a utility patent in a complaint, counterclaim, cross-claim or third party claim, or that seek a declaratory judgment that a utility patent is not infringed, is invalid or is unenforceable. The Court may accelerate, extend, eliminate, or modify the obligations or deadlines set forth in these Patent Local Rules based on the circumstances of any particular case, including, without limitation, the complexity of the case or the number of patents, claims, products, or parties involved.  If any motion filed prior to the Claim Construction Hearing provided for in Patent L.R. 4-6 raises claim construction issues, the Court may, for good cause shown, defer the motion until after completion of the disclosures, filings, or ruling following the Claim Construction Hearing.  The Civil Local Rules of this Court shall also apply to these actions, except to the extent that they are inconsistent with these Patent Local Rules.

**1-3.    Effective Date.**

These Patent Local Rules shall take effect on January 1, 2003 and shall apply to any case filed thereafter.  With respect to cases pending on January 1, 2003, the parties may request that the Court apply these Patent Local Rules after the parties meet and confer to determine the applicability of each Patent Local Rule to the case, then file a stipulation setting forth a proposed order that relates to the application of these Patent Local Rules.

16:02 AUG 21, 2002                    TEL NO: 590-1015              #207887 PAGE: 11/21

## 2. GENERAL PROVISIONS

**2-1.    Governing Procedure.**

    **(a)    Initial Case Management Conference.**  When the parties confer with each other pursuant to Federal Rule of Civil Procedure 26(f), in addition to the matters covered by Federal Rule of Civil Procedure 26, the parties must discuss and address in the Case Management Statement filed pursuant to Federal Rule of Civil Procedure 26(f) and Local Rule CV-16, the following topics:

    **(1)**    Proposed modification of the deadlines provided for in the Patent Local Rules, and the effect of any such modification on the date and time of the Claim Construction Hearing, if any;

    **(2)**    Whether the Court will hear live testimony at the Claim Construction Hearing;

    **(3)**    The need for and any specific limits on discovery relating to claim construction, including depositions of witnesses, including expert witnesses;

    **(4)**    The order of presentation at the Claim Construction Hearing; and

    **(5)**    The scheduling of a Claim Construction Prehearing Conference to be held after the Joint Claim Construction and Prehearing Statement provided for in Patent L.R. 4-3 has been filed.

    **(b)    Further Case Management Conferences.**  To the extent that some or all of the matters provided for in Patent L.R. 2-1(a)(1)-(5) are not resolved or decided at the Initial Case Management Conference, the parties shall propose dates for further Case Management Conferences at which such matters shall be decided.

**2-2.    Confidentiality.**

    If any document or information produced under these Patent Local Rules is deemed confidential by the producing party and if the Court has not entered a protective order, until a protective order is issued by the Court, the document shall be marked "confidential" or with some other confidential designation (such as "Confidential – Outside Attorneys Eyes Only") by the disclosing party and disclosure of the confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s). If a party is not represented by an outside attorney, disclosure of the confidential document or information shall be limited to one designated "in house" attorney, whose identity and job functions shall be disclosed to the producing party 5 court days prior to any such disclosure, in order to permit any motion for protective order or other relief regarding such disclosure. The person(s) to whom disclosure of a confidential document or information is made under this local rule shall keep it confidential and use it only for purposes of litigating the case.

EXHIBIT 1, PAGE 3

16:02 AUG 21, 2002                TEL NO: 590-1015            #207887 PAGE: 12/21

**2-3.    Certification of Initial Disclosures.**

All statements, disclosures, or charts filed or served in accordance with these Patent Local Rules must be dated and signed by counsel of record. Counsel's signature shall constitute a certification that to the best of his or her knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in the statement, disclosure, or chart is complete and correct at the time it is made.

**2-4.    Admissibility of Disclosures.**

Statements, disclosures, or charts governed by these Patent Local Rules are admissible to the extent permitted by the Federal Rules of Evidence or Procedure.  However, the statements or disclosures provided for in Patent L.R. 4-1 and 4-2 are not admissible for any purpose other than in connection with motions seeking an extension or modification of the time periods within which actions contemplated by these Patent Local Rules must be taken.

**2-5.    Relationship to Federal Rules of Civil Procedure.**

Except as provided in this paragraph or as otherwise ordered, it shall not be a legitimate ground for objecting to an opposing party's discovery request (e.g., interrogatory, document request, request for admission, deposition question) or declining to provide information otherwise required to be disclosed pursuant to Federal Rule of Civil Procedure 26(a)(1) that the discovery request or disclosure requirement is premature in light of, or otherwise conflicts with, these Patent Local Rules. A party may object, however, to responding to the following categories of discovery requests (or decline to provide information in its initial disclosures under Federal Rule of Civil Procedure 26(a)(1)) on the ground that they are premature in light of the timetable provided in the Patent Local Rules:

(a)    Requests seeking to elicit a party's claim construction position;

(b)    Requests seeking to elicit from the patent claimant a comparison of the asserted claims and the accused apparatus, product, device, process, method, act, or other instrumentality;

(c)    Requests seeking to elicit from an accused infringer a comparison of the asserted claims and the prior art; and

(d)    Requests seeking to elicit from an accused infringer the identification of any opinions of counsel, and related documents, that it intends to rely upon as a defense to an allegation of willful infringement.

Where a party properly objects to a discovery request (or declines to provide information in its initial disclosures under Federal Rule of Civil Procedure 26(a)(1)) as set forth above, that party shall provide the requested information on the date on which it is required to provide the requested information to an opposing party under these Patent Local Rules, unless there exists another legitimate ground for objection.

EXHIBIT 1, PAGE 4

16:03 AUG 21, 2002                    TEL NO: 590-1015                    #207887 PAGE: 13/21

## 3. PATENT INITIAL DISCLOSURES

**3-1.    Disclosure of Asserted Claims and Preliminary Infringement Contentions.**

Not later than 10 days after the Initial Case Management Conference, a party claiming patent infringement must serve on all parties a "Disclosure of Asserted Claims and Preliminary Infringement Contentions." Separately for each opposing party, the "Disclosure of Asserted Claims and Preliminary Infringement Contentions" shall contain the following information:

(a)    Each claim of each patent in suit that is allegedly infringed by each opposing party;

(b)    Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus must be identified by name or model number, if known. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;

(c)    A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function;

(d)    Whether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents in the Accused Instrumentality;

(e)    For any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled; and

(f)    If a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party must identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim.

**3-2.    Document Production Accompanying Disclosure.**

With the "Disclosure of Asserted Claims and Preliminary Infringement Contentions," the party claiming patent infringement must produce to each opposing party or make available for inspection and copying:

(a)    Documents (*e.g.*, contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta site testing agreements, and third party or joint development agreements) sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, the claimed invention prior to the date of application for the patent

in suit. A party's production of a document as required herein shall not constitute an admission that such document evidences or is prior art under 35 U.S.C. § 102;

(b)    All documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to Patent L.R. 3-1(e), whichever is earlier; and

(c)    A copy of the file history for each patent in suit.

The producing party shall separately identify, by production number, which documents correspond to each category.

3-3.    **Preliminary Invalidity Contentions.**

Not later than 45 days after service upon it of the "Disclosure of Asserted Claims and Preliminary Infringement Contentions," each party opposing a claim of patent infringement, shall serve on all parties its "Preliminary Invalidity Contentions," which must contain the following information:

(a)    The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious. Each prior art patent shall be identified by its number, country of origin, and date of issue. Each prior art publication must be identified by its title, date of publication, and where feasible, author and publisher. Prior art under 35 U.S.C. § 102(b) shall be identified by specifying the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known. Prior art under 35 U.S.C. § 102(f) shall be identified by providing the name of the person(s) from whom and the circumstances under which the invention or any part of it was derived. Prior art under 35 U.S.C. § 102(g) shall be identified by providing the identities of the person(s) or entities involved in and the circumstances surrounding the making of the invention before the patent applicant(s);

(b)    Whether each item of prior art anticipates each asserted claim or renders it obvious. If a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, must be identified;

(c)    A chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function; and

(d)    Any grounds of invalidity based on indefiniteness under 35 U.S.C. § 112(2) or enablement or written description or best mode under 35 U.S.C. § 112(1) of any of the asserted claims.

EXHIBIT 1, PAGE 6

16:04 AUG 21, 2002                    TEL NO: 590-1015                #207887  PAGE: 15/21

**3-4.    Document Production Accompanying Preliminary Invalidity Contentions.**

With the "Preliminary Invalidity Contentions," the party opposing a claim of patent infringement must produce or make available for inspection and copying:

**(a)**    Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its Patent L.R. 3-1(c) chart; and

**(b)**    A copy of each item of prior art identified pursuant to Patent L.R. 3-3(a) which does not appear in the file history of the patent(s) at issue. To the extent any such item is not in English, a certified English translation of the portion(s) relied upon must be produced.

**3-5.    Disclosure Requirement in Patent Cases for Declaratory Judgment.**

**(a)**    **Invalidity Contentions If No Claim of Infringement.**  In all cases in which a party files a complaint or other pleading seeking a declaratory judgment that a patent is not infringed, is invalid, or is unenforceable, Patent L.R. 3-1 and 3-2 shall not apply unless and until a claim for patent infringement is made by a party. If the defendant does not assert a claim for patent infringement in its answer to the complaint, no later than 10 days after the defendant serves its answer, or 10 days after the Initial Case Management Conference, whichever is later, the party seeking a declaratory judgment must serve upon each opposing party its Preliminary Invalidity Contentions that conform to Patent L.R. 3-3 and produce or make available for inspection and copying the documents described in Patent L.R. 3-4. The parties shall meet and confer within 10 days of the service of the Preliminary Invalidity Contentions for the purpose of determining the date on which the plaintiff will file its Final Invalidity Contentions which shall be no later than 50 days after entry by the Court of its Claim Construction Ruling.

**(b)**    **Applications of Rules When No Specified Triggering Event.**  If the filings or actions in a case do not trigger the application of these Patent Local Rules under the terms set forth herein, the parties shall, as soon as such circumstances become known, meet and confer for the purpose of agreeing on the application of these Patent Local Rules to the case.

**(c)**    **Inapplicability of Rule.**  This Patent L.R. 3-5 shall not apply to cases in which a request for a declaratory judgment that a patent is not infringed, is invalid, or is unenforceable is filed in response to a complaint for infringement of the same patent.

EXHIBIT 1, PAGE 7

16:05 AUG 21, 2002                    TEL NO: 590-1015                    #207887  PAGE: 16/21

**3-6.   Final Contentions.**

Each party's "Preliminary Infringement Contentions" and "Preliminary Invalidity Contentions" shall be deemed to be that party's final contentions, except as set forth below:

(a)     If a party claiming patent infringement believes in good faith that (1) the Court's Claim Construction Ruling or (2) the documents produced pursuant to Patent L.R. 3-4 so requires, not later than 30 days after entry by the Court of its Claim Construction Ruling, that party may serve "Final Infringement Contentions" without leave of court that amend its "Preliminary Infringement Contentions" with respect to the information required by Patent L.R. 3-1(c) and (d).

(b)     Not later than 50 days after entry by the Court of its Claim Construction Ruling, each party opposing a claim of patent infringement may serve "Final Invalidity Contentions" without leave of court that amend its "Preliminary Invalidity Contentions" with respect to the information required by Patent L.R. 3-3 if:

(1)     a party claiming patent infringement has served "Final Infringement Contentions" pursuant to Patent L.R. 3-6(a), or

(2)     the party opposing a claim of patent infringement believes in good faith that the Court's Claim Construction Ruling so requires.

**3-7.   Amendment to Contentions.**

Amendment or modification of the Preliminary or Final Infringement Contentions or the Preliminary or Final Invalidity Contentions, other than as expressly permitted in Patent L.R. 3-6, may be made only by order of the Court, which shall be entered only upon a showing of good cause.

**3-8.   Willfulness.**

Not later than 50 days after entry by the Court of its Claim Construction Ruling, each party opposing a claim of patent infringement that will rely on an opinion of counsel as part of a defense to a claim of willful infringement shall:

(a)     Produce or make available for inspection and copying the opinion(s) and any other documents relating to the opinion(s) as to which that party agrees the attorney-client or work product protection has been waived; and

(b)     Serve a privilege log identifying any other documents, except those authored by counsel acting solely as trial counsel, relating to the subject matter of the opinion(s) which the party is withholding on the grounds of attorney-client privilege or work product protection.

A party opposing a claim of patent infringement who does not comply with the requirements of this Patent L.R. 3-8 shall not be permitted to rely on an opinion of counsel as part of a defense to willful infringement absent a stipulation of all parties or by order of the Court, which shall be entered only upon a showing of good cause.

EXHIBIT 1, PAGE 8

16:05 AUG 21, 2002                    TEL NO: 590-1015                    #207887  PAGE: 17/21

## 4. CLAIM CONSTRUCTION PROCEEDINGS

**4-1.    Exchange of Proposed Terms and Claim Elements for Construction.**

(a)    Not later than 10 days after service of the "Preliminary Invalidity Contentions" pursuant to Patent L.R. 3-3, each party shall simultaneously exchange a list of claim terms, phrases, or clauses which that party contends should be construed by the Court, and identify any claim element which that party contends should be governed by 35 U.S.C. § 112(6).

(b)    The parties shall thereafter meet and confer for the purposes of finalizing this list, narrowing or resolving differences, and facilitating the ultimate preparation of a Joint Claim Construction and Prehearing Statement.

**4-2.    Exchange of Preliminary Claim Constructions and Extrinsic Evidence.**

(a)    Not later than 20 days after the exchange of "Proposed Terms and Claim Elements for Construction" pursuant to Patent L.R. 4-1, the parties shall simultaneously exchange a preliminary proposed construction of each claim term, phrase, or clause which the parties collectively have identified for claim construction purposes. Each such "Preliminary Claim Construction" shall also, for each element which any party contends is governed by 35 U.S.C. § 112(6), identify the structure(s), act(s), or material(s) corresponding to that element.

(b)    At the same time the parties exchange their respective "Preliminary Claim Constructions," they shall each also provide a preliminary identification of extrinsic evidence, including without limitation, dictionary definitions, citations to learned treatises and prior art, and testimony of any witnesses, including expert witnesses, they contend support their respective claim constructions. The parties shall identify each such item of extrinsic evidence by production number or produce a copy of any such item not previously produced. With respect to witness, including expert witnesses, the parties shall also provide a brief description of the substance of that witness' proposed testimony.

(c)    The parties shall thereafter meet and confer for the purposes of narrowing the issues and finalizing preparation of a Joint Claim Construction and Prehearing Statement.

**4-3.    Joint Claim Construction and Prehearing Statement.**

Not later than 60 days after service of the "Preliminary Invalidity Contentions," the parties shall complete and file a Joint Claim Construction and Prehearing Statement, which shall contain the following information:

(a)    The construction of those claim terms, phrases, or clauses on which the parties agree;

(b)    Each party's proposed construction of each disputed claim term, phrase, or clause, together with an identification of all references from the specification or prosecution history that support that construction, and an identification of any extrinsic evidence known to the party on which it intends to rely either to support its proposed construction of the claim or to oppose any other

EXHIBIT 1, PAGE 9

16:06 AUG 21, 2002                 TEL NO: 590-1015                #207887 PAGE: 18/21

party's proposed construction of the claim, including, but not limited to, as permitted by law, dictionary definitions, citations to learned treatises and prior art, and testimony of any witnesses, including expert witnesses;

(c)    The anticipated length of time necessary for the Claim Construction Hearing;

(d)    Whether any party proposes to call one or more witnesses, including experts, at the Claim Construction Hearing, the identity of each such witness, and for each expert, a summary of each opinion to be offered in sufficient detail to permit a meaningful deposition of that expert; and

(e)    A list of any other issues which might appropriately be taken up at a prehearing conference prior to the Claim Construction Hearing, proposed dates, if not previously set, for any such prehearing conference, and the jointly agreeable dates for a Claim Construction Hearing pursuant to Patent L.R. 4-6.

**4-4.    Completion of Claim Construction Discovery.**

Not later than 30 days after service and filing of the Joint Claim Construction and Prehearing Statement, the parties shall complete all discovery relating to claim construction, including any depositions with respect to claim construction of any witnesses, including experts, identified in the Joint Claim Construction and Prehearing Statement.

**4-5.    Claim Construction Briefs.**

(a)    Not later than 45 days after serving and filing the Joint Claim Construction and Prehearing Statement, the party claiming patent infringement shall serve and file an opening brief and any evidence supporting its claim construction.

(b)    Not later than 14 days after service upon it of an opening brief, each opposing party shall serve and file its responsive brief and supporting evidence.

(c)    Not later than 7 days after service upon it of a responsive brief, the party claiming patent infringement shall serve and file any reply brief and any evidence directly rebutting the supporting evidence contained in an opposing party's response.

**4-6.    Claim Construction Hearing.**

Subject to the convenience of the Court's calendar, two weeks following submission of the reply brief specified in Patent L.R. 4-5(c), the Court shall conduct a Claim Construction Hearing, to the extent the parties or the Court believe a hearing is necessary for construction of the claims at issue.

16:06 AUG 21, 2002                    TEL NO: 590-1015              #207887 PAGE: 19/21

## 5. PROCEEDINGS ON CLAIMS OF PATENT INVALIDITY

**5-1.    Completion of Invalidity Discovery.**

Not later than 45 days after entry by the Court of its Claim Construction Ruling, the parties shall complete all discovery relating to invalidity, including any depositions, with respect to invalidity, of any witnesses, including experts, who may provide testimony to support Preliminary Invalidity Contentions and/or Final Invalidity Contentions.

**5-2.    Federal Rule of Civil Procedure 56 Motions on Invalidity.**

If a party opposing a claim of infringement also seeks to move the Court under Federal Rule of Civil Procedure 56 to issue a pre-trial ruling on any invalidity issue, then that party must file all opening briefs for Federal Rule of Civil Procedure 56 motions on invalidity no later than 15 days after service of the Final Invalidity Contentions under Patent L.R. 3-6. Response and reply briefing shall be filed according to the schedule set forth in Patent L.R. 4-5.

EXHIBIT 1, PAGE 11

Case 2:04-cv-00085-DF    Document 26    Filed 01/03/2006    Page 27 of 49
Case 5:03-cv-00039-DF-CMC    Document 78-1    Filed 06/08/2004    Page 26 of 36
16:06 AUG 21, 2002          TEL NO: 590-1015          #207887 PAGE: 20/21

# 6. PROCEEDINGS ON CLAIMS OF PATENT UNENFORCEABILITY

**6-1.    Applicability of Rule.**

   Patent L.R. 6-1 to 6-6 shall apply when any party opposing a claim of patent infringement also asserts claims of the patent(s) in suit are unenforceable due to inequitable conduct, fraud on the Patent Office, unclean hands, or the similar claims for equitable relief (individually referred to as "Unenforceability Claim" and collectively referred to as "Unenforceability Claims").

**6-2.    Preliminary Unenforceability Contentions.**

   Not later than 45 days after entry by the Court of its Claim Construction Ruling, each party asserting an Unenforceability Claim shall serve on all parties "Preliminary Unenforceability Contentions," which must specify with particularity the legal and factual basis of each unenforceability claim as well as provide at least the following information:

   (a)    The identity of each prior art reference and each piece of information that is material to patentability;

   (b)    All evidence of knowledge chargeable to applicant(s) of that prior art or information;

   (c)    All evidence of materiality;

   (d)    All evidence of applicant(s)' intent to deceive or mislead the Patent Office; and

   (e)    All evidence of the resulting failure of applicant(s) to disclose the prior art or information.

   The "Preliminary Unenforceability Contentions" must also separately identify by production number which documents correspond to each category.

**6-3.    Document Production Accompanying Preliminary Unenforceability Contentions.**

   With the "Preliminary Unenforceability Contentions," the party asserting an unenforceability claim must produce or make available for inspection and copying all documents, materials, code, specifications, schematics, flow charts, artwork, formulas, and other evidence bearing significantly on or relied upon that proves or disproves any asserted unenforceability claim, as well as disclose the identity of all fact witnesses, the identity of all expert witnesses, and for each expert, a summary of each opinion to be offered in sufficient detail to permit a meaningful deposition of that expert.

EXHIBIT 1, PAGE 12

Case 2:04-cv-00085-DF    Document 26    Filed 01/03/2006    Page 28 of 49
Case 5:03-cv-00039-DF-CMC    Document 78-1    Filed 06/08/2004    Page 27 of 36
16:07 AUG 21, 2002                    TEL NO: 590-1015              #207887  PAGE: 21/21

**6-4.    Final Unenforceability Contentions.**

Not later than 10 days after the completion of unenforceability discovery under Patent L.R. 6-5, each party asserting an Unenforceability Claim may serve "Final Unenforceability Contentions." If a party does not serve its Final Unenforceability Contentions by this deadline, then that party's Preliminary Unenforceability Contentions shall be deemed its Final Unenforceability Contentions. Amendment or modification of the Final Unenforceability Contentions may be made only by order of the court, which shall be entered only upon a showing of good cause.

**6-5.    Completion of Unenforceability Discovery.**

Not later than 30 days after service of the Preliminary Unenforceability Contentions, the parties shall complete all discovery relating to unenforceability, including any depositions of any witnesses, including experts, who may provide testimony to support Preliminary Unenforceability Contentions and/or Final Unenforceability Contentions.

**6-6.    Federal Rule of Civil Procedure 56 Motions on Unenforceability.**

If a party opposing a claim of infringement also seeks to move the Court under Federal Rule of Civil Procedure 56 to issue a pre-trial ruling on any Unenforceability Claim or related issue, then that party must file all opening briefs for Federal Rule of Civil Procedure 56 motions on unenforceability no later than 15 days after service of the Final Unenforceability Contentions under Patent L.R. 6-4. Response and reply briefing shall be filed according to the schedule set forth in Patent L.R. 4-5.

EXHIBIT 1, PAGE 13

Case 2:04-cv-00085-DF    Document 26    Filed 01/03/2006    Page 29 of 49
Case 5:03-cv-00039-DF-CMC    Document 78-1    Filed 06/08/2004    Page 28 of 36
15:59 AUG 21, 2002                TEL NO: 590-1015                #207887 PAGE: 1/21



# Official Facsimile Notice

---

**To:**            James Patrick Bradley

**Fax Number :**   12149813400

**Phone Number :**

**Time Sent :**    Wednesday, Aug 21, 2002   03:57PM

**Pages :**        21

**Description :**  Case Number: 5:02-cv-94 Document Number: 25

---

Clerk's Office Voice Phone Numbers

| | |
|---|---|
| Beaumont | (409) 654-7000 |
| Lufkin | (409) 632-2739 |
| Tyler | (903) 590-1000 |
| Marshall | (903) 935-2912 |
| Texarkana | (903) 794-8561 |
| Sherman | (903) 892-2921 |

---

-Government Service is a Public Trust-

**NOTICE: All Paris Division documents are now filed in the Tyler Division.
Please file your Paris Division documents in Tyler.**

### A.  '988 PATENT.

### 1.  Claim 1.

| CLAIM LANGUAGE | ACCUSED INSTRUMENTALITY |
|---|---|
| 1. A system for central management, storage and report generation of remotely captured paper transactions from documents and receipts comprising: | ECA.<br>CIAP. |
| one or more remote data access subsystems for capturing and sending paper transaction data and subsystem identification information comprising at least one imaging subsystem for capturing the documents and receipts and at least one data access controller for managing the capturing and sending of the transaction data; | ECA, which includes Eclipse and Accelera.<br><br>ECA and Eclipse are capable of "capturing ... paper transaction data and subsystem identification information." *See, e.g.,* FDC03199 ("300 dpi capture. Capable of imaging documents ...."); FDC00076 (examples of check transaction data captured by ECA); FDC00075 and 00078 ("TeleCheck subscriber number"); FDC00080 ("MER # 05192565");<br><br>ECA and Eclipse include "at least one imaging subsystem for capturing the documents and receipts." *See, e.g.,* FDC00026 ("SCAN Image" step); FDC03199 ("Capable of imaging documents ....").<br><br>ECA and Eclipse include "at least one data access controller for managing the capturing and sending of the transaction data." *See, e.g.,* FDC03199 ("Processor ... 32-bit, 24 MHZ Motorola 68302"); FDC03040-03053 (ECA/Eclipse operating software flowcharts depicting "managing," "capturing," and "sending").<br><br>ECA and Accelera are capable of "capturing ... paper transaction data and subsystem identification information." *See, e.g.,* FDC00034 ("Ability to scan check image and transfer those images to the Host (Telecheck)"); FDC00112 ("Also with this packet will be an identifier to inform the Host that the Accelera hardware does support imaging.").<br><br>ECA and Accelera includes "at least one imaging subsystem for capturing the documents and receipts." *See, e.g.,* FDC00127 ("Accelera NG ... Requirements .... The ability to take a full image of a check.").<br><br>ECA and Accelera include "at least one data access controller for managing the capturing and sending of the transaction data." *See, e.g.,* FDC00127 ("Accelera NG ... Utilized the new 14.4 communications process to send file back to Host.").<br><br>CIAP includes components and functions that meet |



| CLAIM LANGUAGE | ACCUSED INSTRUMENTALITY |
|---|---|
| | every claim limitation recited here. *See, e.g.*, the CIAP 2002 Article and the CIAP 2002 PP Presentation.<br><br>The limitations of this claim element are present in ECA and in CIAP as set forth above literally and under the doctrine of equivalents. |
| at least one central data processing subsystem for processing, sending, verifying and storing the paper transaction data and the subsystem identification information comprising a management subsystem for managing the processing, sending and storing of the of the transaction data; and | ECA, which includes components and functions under PHASE I, PHASE II, PHASE III, and PHASE 4 (*a.k.a.* PROCESS A, PROCESS B, PROCESS C, PROCESS, D, and PROCESS E).<br><br>ECA, including PHASE I, PHASE II, PHASE III, and PHASE 4, are capable of "processing ... the paper transaction data and the subsystem identification information." *See, e.g.*, FDC00027 and 00031 ("Image Control Process," "Image Processing"); FDC00029 ("PROCESS B Processing of Images").<br><br>ECA, including PHASE I, PHASE II, PHASE III, and PHASE 4, are capable of "sending ... the paper transaction data and the subsystem identification information." *See, e.g.*, FDC00027 and 00031 ("14.4 Quick Connect," all flowchart arrows); FDC00029 ("Process A Send Data From NG").<br><br>ECA, including PHASE I, PHASE II, PHASE III, and PHASE 4, are capable of "verifying ... the paper transaction data and the subsystem identification information." *See, e.g.*, FDC00080-0008127 (verification reference in section titled "What if the check is DECLINED?"); FDC00027 and 00031 ("Authorizations"); FDC00037 ("The Universal Database (UDB) will be used to verify items such as City, State, Zip.").<br><br>ECA, including PHASE I, PHASE II, PHASE III, and PHASE 4, are capable of "storing ... the paper transaction data and the subsystem identification information." *See, e.g.*, FDC00041 ("The Storage Process will take the Image and send it to the First Data Image Storage System."); FDC00029 ("Process D Storage Process").<br><br>ECA, including PHASE I, PHASE II, PHASE III, and PHASE 4, include "a management subsystem for managing the processing, sending and storing of the of the transaction data." *See, e.g.*, FDC00108 ("Management GUI," "Image Control Process"). |

| CLAIM LANGUAGE | ACCUSED INSTRUMENTALITY |
|---|---|
| | CIAP includes components and functions that meet every claim limitation recited here. *See, e.g.,* the CIAP 2002 Article and the CIAP 2002 PP Presentation.<br><br>The limitations of this claim element are present in ECA and in CIAP as set forth above literally and under the doctrine of equivalents. |
| at least one communication network for the transmission of the transaction data within and between said one or more data access subsystems and said at least one data processing subsystem, with the data access subsystem providing encrypted subsystem identification information and encrypted paper transaction data to the data processing subsystem. | ECA, which includes every line of communication within a system component or element, Eclipse, or Accelera, and between at least two system components or elements, Eclipse, and Accelera.<br><br>ECA, including its communication network, is capable of accomplishing "the transmission of the transaction data within ... said one or more data access subsystems." *See, e.g.,* FDC03199 ("Processor ... 32-bit, 24 MHZ Motorola 68302").<br><br>ECA, including its communication network, is capable of accomplishing "the transmission of the transaction data ... between said one or more data access subsystems." *See, e.g.,* FDC00024 ("1200/2400 baud dial up," "14400 baud dial up," "PSTN"); FDC00027 (network between "Eclipse," "Sprint," "Gateway," and "Authorizations" components/elements); FDC00034 ("communication between the Accelera NG and the Host").<br><br>ECA, including its communication network functioning with Eclipse and Accelera, is capable of "providing encrypted subsystem identification information ... to the data processing subsystem." *See, e.g.,* FDC00127 ("the new 14.4 communications process," "Communication Protocol to Gateway," "Gateway VMS"); FDC00131 ("This device will ... create an image and an ASCII file," "custom coding"); FDC112 ("notifier telling the host what type of Accelera it is, being send with the main packet.").<br><br>ECA, including its communication network functioning with Eclipse and Accelera, are capable of "providing ... encrypted paper transaction data to the data processing subsystem." *See, e.g.,* FDC00127 ("the new 14.4 communications process," "Communication Protocol to Gateway," "Gateway VMS"); FDC00131 ("This device will ... create an image and an ASCII file," "custom coding"); FDC112 ("notifier telling the host what type of Accelera it is, being send with the main packet."). |

C D
Attached
to Exhibit
B

# SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| CHICAGO | 717 NORTH HARWOOD | BEIJING |
| LOS ANGELES | SUITE 3400 | GENEVA |
| NEW YORK | DALLAS, TEXAS 75201 | HONG KONG |
| SAN FRANCISCO | TELEPHONE 214 981 3300 | LONDON |
| WASHINGTON, D.C. | FACSIMILE 214 981 3400 | SHANGHAI |
| | www.sidley.com | SINGAPORE |
| | FOUNDED 1866 | TOKYO |

WRITER'S DIRECT NUMBER
(214) 981-3306

WRITER'S E-MAIL ADDRESS
jbradley@sidley.com

December 2, 2002

**FILE COPY**

**By Facsimile**

Michael W. Shore, Esq.
Shore★Deary
2515 McKinney Avenue, Suite 1565
Dallas, Texas  75201

Re:    *DataTreasury Corp. v. First Data Corp., et al.*
        Civil Action No. 3:02-CV-2429-P

Dear Michael:

        I write to ask that you transmit today by facsimile a copy of DataTreasury's response to *The First Data Defendants' Motion to Transfer*, and to address some of the complaints noted in your November 27 letter.

        After receiving your November 27, 2002 letter I reviewed again *The First Data Defendants' Motion to Transfer*, and the basis for your complaints of improper conduct remains a mystery. All of the factual statements made in that Motion have support. If there is any statement of fact in *The First Data Defendants' Motion to Transfer* that you believe is incorrect, please identify it.

        Second, your suggestion to have this case decided on the merits is welcomed. The First Data Defendants would like nothing more. It would help matters if your client would supplement its infringement contentions and permit access to those supplemental answers so that the accused – the First Data Defendants – may learn why they have been sued. If DataTreasury should have any lingering doubts as to its obligation to provide the requested information, please refer to the case that the First Data Defendants cite in their *Motion to Compel Compliance with the Docket Control Order* – View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 986 (Fed. Cir. 2000):

        In bringing a claim of infringement, the patent holder, if challenged, must
        be prepared to demonstrate to both the court and the alleged infringer
        exactly why it believed before filing the claim that it had a reasonable
        chance of proving infringement. Failure to do so should ordinarily result

S I D L E Y  A U S T I N  B R O W N  &  W O O D  LLP                    D A L L A S

Michael W. Shore, Esq.
December 2, 2002
Page 2

in the district court expressing its broad discretion in favor of Rule 11
sanctions, at least in the absence of a sound excuse or considerable
mitigating circumstances.

Third, I repeat the request noted in my October 15 letter: "Please identify where
in Plaintiff's production can we find a record of the 'telephonic interview on February 2, 1999,'
that Mr. Mark A. Taylor, attorney for the named inventor, held with the Patent Examiner." The
telephone interview is referenced in DTC000157.

Lastly, I urge you to be mindful of the *Dondi* standard in our future
communications:

(K) Effective advocacy does not require antagonistic or obnoxious
behavior and members of the Bar will adhere to the higher
standard of conduct which judges, lawyers, clients and [t]he public
may rightfully expect.[1]

Sincerely,

*James P. Bradley*

James P. Bradley

JPB:bk

cc:    Edward L. Hohn, Esq. (via facsimile)
       Joe Kendall, Esq. (via facsimile)
       Lance Lee, Esq. (via facsimile)
       Edward G. Poplawski, Esq. (firm)

---

[1] STANDARDS OF PRACTICE TO BE OBSERVED BY ATTORNEYS APPEARING IN CIVIL ACTIONS,
NORTHERN DISTRICT OF TEXAS, Adopted in Dondi Props. Corp. v. Commerce Sav. and Loan
Ass'n, 121 F.R.D. 284 (N.D. Tex. 1988).

# SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | 717 NORTH HARWOOD | LOS ANGELES |
| BRUSSELS | SUITE 3400 | NEW YORK |
| CHICAGO | DALLAS, TEXAS 75201 | SAN FRANCISCO |
| DALLAS | TELEPHONE 214 981 3300 | SHANGHAI |
| GENEVA | FACSIMILE 214 981 3400 | SINGAPORE |
| HONG KONG | www.sidley.com | TOKYO |
| LONDON | FOUNDED 1866 | WASHINGTON, D.C. |

WRITER'S DIRECT NUMBER                                                WRITER'S E-MAIL ADDRESS
(214) 981-3385                                                         lchen@sidley.com

March 10, 2004

Rod Cooper                              *VIA E-Mail and Facsimile (972) 692-5445*
The Cooper Law Firm
545 E. John Carpenter Freeway
Suite 1460
Irving, Texas 75062

Re:    DataTreasury Corp. v. First Data Corp., et al. – Cause No. 5:03CV39

Dear Rod:

Thank you for your e-mail.  As you know from our call of this afternoon, the First Data Defendants remain anxious about obtaining DataTreasury's substantive interrogatory answers and infringement contentions.  We asked DataTreasury to advise by the close of business this Friday, March 12, 2004, if it will commit to supplying substantive interrogatory answers and infringement contentions on or before March 26, 2004.  Plaintiff agreed to give a definitive answer of its intentions this Friday, but has asked that it be given until March 31, 2004, to provide its substantive responses, if any.  I noted during our call this extension should be fine and have since obtained confirmation.  If Plaintiff commits to us by this Friday that it will provide substantive interrogatory answers and infringement contentions on or before March 31, 2004, the First Data Defendants will withhold our motions on these subjects.  And while we're on the subject, please also advise by Friday if Plaintiff will withdraw its FOCO designation to its interrogatory answers.

Although we have sent multiple letters explaining the deficiencies in Plaintiff's interrogatory answers and infringement contentions, these matters warrant a brief recap.  The First Data Defendants would like to have this case decided on the merits.  But that is difficult to do when we have no clue why Plaintiff believes any of the First Data Defendants infringe.  DataTreasury's Disclosure fails to identify any FDC product or service that allegedly infringes any of the asserted claims.  Similarly, while Plaintiff did identify TeleCheck's Electronic Check Acceptance Service System as an accused system, Plaintiff's claim charts contain no specific identification of "where each element of each asserted claim is found within each Accused Instrumentality."

SIDLEY AUSTIN & WOOD LLP IS A DELAWARE LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS



SIDLEY AUSTIN BROWN & WOOD LLP                    DALLAS

Mr. Rod Cooper
March 10, 2004
Page 2

By way of example, common to every claim in the '137 patent and most claims in the '988 patent is the requirement that the Accused Instrumentality contain a "data access subsystem" that provide "encrypted subsystem identification information and encrypted paper transaction data" or the step of "encrypting subsystem identification information and the transaction data." We do not understand how either the Eclipse or Accelera terminals – the devices identified in Plaintiff's claim charts – satisfy this and other limitations. Rather than identify the component(s) or step(s) in the accused product that meet these limitations, DataTreasury's Disclosure provides this boilerplate language: "The TeleCheck ECA Service System and its communication network. This element is literally present, and if not literally present, present under the doctrine of equivalents."

Plaintiff's Disclosure is inadequate. Its interrogatory answers similarly lack substance. We urge Plaintiff to supplement its Disclosure of Asserted Claims and Preliminary Infringement Contentions and interrogatory answers.

Sincerely,

Li Chen

cc:    Edward L. Hohn (by e-mail)
       Joe Kendall (by e-mail)
       Eric Albritton (by e-mail)
       T. John Ward (by e-mail)
       Lance Lee (by e-mail)
       James P. Bradley (firm)
       Edward G. Poplawski (firm)
       All other counsel of record (by e-mail)

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

SEP 20 2004

DAVID J. MALAND, CLERK
BY
DEPUTY

IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

DATATREASURY CORPORATION  §
§
V.  §          No. 5:03CV39
§
FIRST DATA CORPORATION, FIRST  §
DATA MERCHANT SERVICES CORP., §
TELECHECK SERVICES, INC. *d/b/a*  §
TELECHECK INTERNATIONAL, INC.,§
and MICROBILT CORPORATION  §

## ORDER

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the

Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges dated January

15, 1994, The First Data Defendants' Motion to Compel Compliance with the Docket Control Order

[Docket No. 25] (Docket Entry # 78), Plaintiff's Motion to Compel (Docket Entry # 104), and The

First Data Defendants' Motion to Compel Plaintiff's Compliance with Court Order and for

Protective Order (Docket Entry # 105) were referred to the Honorable Caroline M. Craven for the

purposes of hearing and determining said motions. The Court, having reviewed the relevant briefing,

is of the opinion Plaintiff's motion should be **DENIED**. The Court is further of the opinion First

Data's motion to compel compliance with Court order and for protective order should be **DENIED**,

and First Data's motion to compel compliance with the docket control order should be **GRANTED**.

## I. BACKGROUND

DataTreasury Corporation ("Plaintiff") originally filed a patent infringement action against

First Data Corporation, First Data Merchant Services Corporation, and TeleCheck Services, Inc.

d/b/a TeleCheck International, Inc. in this Court. ( *See* 5:02cv94). The case was referred to the

undersigned for all pretrial purposes. On November 7, 2002, Plaintiff voluntarily dismissed the case and refiled it in the United States District Court for the Northern District, Dallas Division on the same day. The Dallas Court granted a motion filed by the First Data Defendants and Microbilt Corporation (collectively "First Data") to transfer the case to this Court. The case was assigned a new cause number, and the undersigned was again referred the case for pretrial purposes.

Plaintiff holds U.S. Patents No. 5,910,988 ("'988 Patent") and 6,032,137 ("'137 Patent"). The patents deal with the remote capture of data and digital images, transportation of encrypted data, and centralized processing and storage. Plaintiff alleges First Data has infringed Plaintiff's patents in various ways, including First Data's alleged capture and transmission of data and digital images.

## II. PLAINTIFF'S MOTION TO COMPEL

### A.  Plaintiff's Arguments

In its current motion, Plaintiff states it sent several hundred Requests for Production to First Data. Plaintiff complains that First Data expects Plaintiff to apply the confidentiality designations to First Data's responsive documents, and First Data will not allow the production to proceed without the documents being labeled as confidential or not. Plaintiff asks the Court for a determination on who bears the burden to apply a label of confidentiality to a party's documents - the party producing them, or the party to whom they are produced. Plaintiff contends the Protective Order entered by the Court as well as the normal custom, practice, and procedure in this Court is that a party reviews and labels it owns documents before producing them.

According to Plaintiff, all other defendants involved in litigation with Plaintiff in this Court have (1) inspected their own documents, (2) applied the confidentiality label, (3) Bates stamped their documents, (4) scanned the documents, and (5) produced the documents in electronic format by

providing a CD of responsive documents at their own expense. Plaintiff states First Data is the only defendant that has refused to follow this procedure. Plaintiff asks the Court to order First Data to inspect their own documents, label them, and produce them or make them available.

Finally, although Plaintiff has acknowledged its obligation to answer First Data's interrogatories and the Court has previously ordered Plaintiff to do so,[1] Plaintiff asserts it has not answered the interrogatories because its responses would not have much substantive value without first reviewing First Data's documents. Plaintiff states it will be happy to provide factually bare but legally sufficient answers if that would please the Court and First Data. However, Plaintiff contends it will not be able to provide the kind of in-depth responses that would please First Data until after Plaintiff is afforded an opportunity to review the universe of relevant documents First Data has compiled but refused to produce. For this reason, Plaintiff seeks an extension of its deadline to answer First Data's interrogatories until 75 days after the completion of First Data's document production. Plaintiff further seeks an award of its attorneys' fees and costs incurred in filing this motion.

**B.    First Data's Response**

In response, First Data first asserts that over twenty months ago it produced terminal source code, schematics, manuals, and the actual accused Accelera and Eclipse terminals to Plaintiff. First Data states since that time, Plaintiff has served 539 overbroad and burdensome document requests to First Data, seeking such things as all documents that are relevant to or refer to authorizing check

---

[1] On June 29, 2004, the Court ordered Plaintiff to supplement its responses to First Data's ten interrogatories within twenty days from the date of entry of the Order, providing proper answers to all non-objectionable interrogatories contained in First Data's First Set of Interrogatories.

transactions, check acceptance, check guarantee services, etc.  Given the breadth of Plaintiff's requests and based on a similar procedure utilized by the parties in a case in the Northern District of California, First Data asserts it offered to make the universe of documents available for Plaintiff's inspection.  According to First Data, it even offered to ship the entire production of approximately 560 boxes to Sidley Austin Brown & Wood LLP's Dallas office, reserve a conference room for the inspection team, and pay for the copy cost of the first 125,000 pages of which Plaintiff claims to have an interest.  In addition, First Data states it has always indicated it will apply confidentiality designations once Plaintiff inspects the production and identifies the universe of documents in which Plaintiff has an interest.  To protect the confidentiality of the documents, First Data asks the inspection team be comprised only of individuals that are entitled to review documents designated *For Outside Counsel Only* under the Court's Protective Order.  Finally, First Data states it has been cooperative throughout the discovery process while Plaintiff is in open violation of this Court's Orders.  First Data asks the Court to deny Plaintiff's Motion to Compel.

**C.    Discussion**

Plaintiff's Motion to Compel is denied.  The Court agrees with Plaintiff that ordinarily the party producing the documents would do so after it had inspected and Bates stamped the documents.  Departing from normal procedures in this instance is warranted though,[2] given the number of documents to be produced and the burden Defendants are willing to assume by their proposal.  First Data's inspection proposal is fair and reasonable, and one that Plaintiff previously operated under in a case in the Northern District of Texas.   For these reasons, Plaintiff's Motion to Compel is

---

[2] However, the Court will require First Data, the producing party, to pay the costs of copying for all documents selected by Plaintiff as opposed to the first 125,000 pages only.

4

**DENIED**.

Within fifteen days from the date of entry of this Order, First Data shall ship the entire production of documents to Sidley Austin Brown & Wood LLP's Dallas office and reserve a conference room for Plaintiff's inspection team. The inspection team shall be comprised only of outside litigation counsel and their staff. After Plaintiff selects specified documents or materials for copying, First Data shall make the appropriate copies, and the appropriate confidentiality designations shall be placed on the specified documents or materials prior to providing the copies to Plaintiff. First Data shall pay the costs of copying.

## III. FIRST DATA'S MOTION TO COMPEL AND FOR PROTECTIVE ORDER

**A.    First Data's Arguments**

As mentioned in footnote 1 above, on June 29, 2004, the Court ordered "Plaintiff to provide supplemental answers to Defendants' ten interrogatories... within twenty days from the date of entry of this Order." *See* Docket Entry # 95. Plaintiff had until July 19, 2004 to supplement its answers. First Data asserts, and Plaintiff concedes, that it did not supplement its answers. Instead, on August 4, 2004, Plaintiff filed its Motion to Compel that the Court denied in Subsection II(C) above.

First Data filed its current motion on August 13, 2004, asserting Plaintiff controls the information it needs to answer eight of the ten interrogatories, and Plaintiff should have substantive answers even for the two remaining interrogatories assuming Plaintiff has satisfied its Rule 11 obligations. First Data also states it offered Plaintiff an opportunity to inspect the First Data documents in July of 2004, but Plaintiff refused and instead manufactured a discovery dispute by incorrectly alleging First Data refused to place confidentiality designations on their own documents.

5

First Data seeks an Order compelling Plaintiff to provide substantive answers to First Data's First Set of Interrogatories within five days from the date of Order and to award First Data attorneys' fees and reasonable costs incurred in filing this motion. First Data further requests the Court preclude Plaintiff from taking any depositions of First Data until it has fully complied with this Court's Order and provided substantive interrogatory answers.

**B.    Plaintiff's Response**

In response, Plaintiff states in an effort to resolve all of these complaints, Plaintiff served First Data with its supplemental responses to the interrogatories. *See Plaintiff's September 2, 2004 Supplemental Responses to First Data's Interrogatories*, attached as Exhibit 1. Plaintiff contends it is still "hamstrung" in answering the interrogatories because First Data refuses to produce its 539 boxes of documents.[3] However, Plaintiff asserts it attempted to respond as best it could. Finally, given it has served its supplemental answers, Plaintiff asks it be allowed to begin deposing the First Data Defendants' representatives.

In its surreply, Plaintiff again states that if First Data wants to provide its documents in the same fashion as all other parties to this litigation, "maybe [Plaintiff] will be able to supplement its already 250 pages of interrogatory responses."[4] Plaintiff further requests an award of attorneys' fees and reasonable costs incurred in responding to First Data's motion.

**C.    Discussion**

Despite Plaintiff's voluntary supplementation of First Data's interrogatories, the Court notes there was in place an Order compelling discovery by July 19. Plaintiff willfully violated the Order

---

[3] Plaintiff's response at pg. 2.

[4] Plaintiff's surreply at pg. 2.

6

when it failed to supplement its answers by that date. Plaintiff did not inform the Court of its reasons for failing to obey the Court's directive until it filed its Motion to Compel on August 4, 2004.

It is well within the Court's discretion to award fees and costs as requested by First Data, as Plaintiff has clearly violated the Court's June 29 order. The Court is very troubled by Plaintiff's failure either to comply with the Order or to advise the Court timely of Plaintiff's anticipated failure to do so. If the Court could but find First Data had been prejudiced by Plaintiff's willful violation, the Court would sanction Plaintiff without hesitation.[5] Because the Court finds no prejudice to First Data, its request for attorneys' fees and reasonable costs associated with the filing of its motion is **DENIED**.[6] The relief requested in the remainder of First Data's motion is also **DENIED**. If warranted, Plaintiff shall supplement its answers to First Data's First Set of Interrogatories after Plaintiff reviews First Data's document production.

## IV. FIRST DATA'S MOTION TO COMPEL
## COMPLIANCE WITH DOCKET CONTROL ORDER

A.      **The Parties' Arguments**

First Data contends the Court's August 21, 2002 Docket Control Order required Plaintiff to provide "a chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality. . . ." The Docket Control Order referred to by First Data is actually the one entered in the first case filed by Plaintiff against First Data in this Court (5:02cv94). When the case was returned to this Court from Dallas, the case was assigned a new cause number.

---

[5] Plaintiff is put on notice that any future violations of this Court's orders will not be tolerated.

[6] Oddly, Plaintiff requested its attorneys' fees and costs in responding to Defendants' motion. Plaintiff's request is denied.

7

(5:03cv95). First Data asserts Plaintiff has engaged in gamesmanship in dismissing this case and refiling it in another forum, and throughout it all, Plaintiff's October 21, 2002 and April 1, 2004 disclosures of asserted claims and preliminary contentions do not provide the specificity required by the Court's original Docket Control Order.

Plaintiff states it is complying with the Court's Orders to the best of its ability. Plaintiff asserts it has sufficiently informed First Data of the claims it is asserting, and it has further identified numerous accused products. Plaintiff again contends First Data has "stonewalled all of Plaintiff's formal discovery attempts by objecting to appropriate interrogatories and by refusing to produce a single document in response to over 300 proper requests for production."[7]

In its reply, First Data asserts Plaintiff has the information it needs to prepare infringement contentions, and it has had ample opportunity to study the accused devices. While First Data acknowledges it has large amounts of additional documents to produce because of Plaintiff's overbroad requests, First Data asserts this does not excuse Plaintiff's dilatory conduct.

**B.    Discussion**

First Data's motion is **GRANTED**. Within fifteen days following its receipt of the copies of First Data's document production, Plaintiff shall supplement Plaintiff's Disclosure of Asserted Claims and Preliminary Infringement Contentions. Based on the foregoing, it is

**ORDERED** that Plaintiff's Motion to Compel (Docket Entry # 104) is hereby **DENIED**. It is further

**ORDERED** that within fifteen days from the date of entry of this Order, First Data shall ship the entire production of documents to Sidley Austin Brown & Wood LLP's Dallas office and reserve

---

[7] Plaintiff's response at pg. 1.

8

a conference room for Plaintiff's inspection team. The inspection team shall be comprised only of outside litigation counsel and their staff. After Plaintiff selects specified documents or materials for copying, First Data shall make the appropriate copies, and the appropriate confidentiality designations shall be placed on the specified documents or materials prior to providing the copies to Plaintiff. First Data shall pay the costs of copying. It is further

**ORDERED** that if warranted, Plaintiff shall supplement its answers to First Data's First Set of Interrogatories after Plaintiff reviews First Data's document production. It is further

**ORDERED** that The First Data Defendants' Motion to Compel Plaintiff's Compliance with Court Order and for Protective Order (Docket Entry # 105) is hereby **DENIED**. It is further

**ORDERED** that The First Data Defendants' Motion to Compel Compliance with the Docket Control Order [Docket No. 25] (Docket Entry # 78) is hereby **GRANTED**. Within fifteen days following its receipt of the copies of First Data's document production, Plaintiff shall supplement Plaintiff's Disclosure of Asserted Claims and Preliminary Infringement Contentions.

**SIGNED** this _20th_ day of September, 2004.

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE

**EXHIBIT 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

DATATREASURY CORPORATION,

Plaintiff,

v.

SMALL VALUE PAYMENTS COMPANY,

Defendant.

Civil Action No. 2:04cv85

Hon. David J. Folsom

## PRELIMINARY INVALIDITY CONTENTIONS OF DEFENDANT
## SMALL VALUE PAYMENTS COMPANY

Defendant Small Value Payments Company ("SVPCo")[1] hereby makes, pursuant to local Patent Rules 3-3 and 3-4 and the January 19, 2005 Agreed Case Management Order, its preliminary invalidity contentions to plaintiff, DataTreasury Corporation ("DTC"), for U.S. Patents Nos. 5,910,988 ("the '988 patent") and 6,032,137 ("the '137 patent") (collectively "the Patents-in-Suit").

SVPCo disputes the adequacy of DTC's Preliminary Infringement Contentions ("DTC's Contentions"), which DTC belatedly served on April 10, 2005, more than three weeks after the court-ordered due date. Indeed, DTC's Contentions do not comply with P.R. 3-1. For instance, DTC listed therein all 93 claims of the Patents-in-Suit, yet only identified an "accused instrumentality" with respect to claims 1, 2, and 26 of the '988 patent and 1, 2, 26, 42, and 43 of the '137 patent. DTC also failed to identify *specifically* where *each* element of each listed claim

---

[1] In 2004, SVPCo merged with The Clearing House and affiliated payments businesses to form a single payments company, The Clearing House Payments Company, LLC.

is found in the "accused instrumentality." It is unclear which claims, if any, DTC has *asserted* against SVPCo under P.R. 3-1. Accordingly, SVPCo's preliminary invalidity contentions address claims 1, 2, and 26 of the '988 patent and 1, 2, 26, 42, and 43 of the '137 patent (hereinafter deemed the "asserted claims"), and also generally address the remainder of the 93 claims. SVPCo reserves the right, however, to file a motion with the Court seeking more detailed and meaningful infringement contentions from DTC.

SVPCo also reserves the right to modify, amend, or otherwise supplement its preliminary invalidity contentions once DTC clarifies which of the 93 claims of the Patents-in-Suit it is *asserting* against SVPCo. In addition, SVPCo reserves the right to modify, amend, or otherwise supplement its preliminary infringement contentions after the Court issues its claim construction ruling pursuant to P.R. 3-6(b).

SVPCo makes these preliminary invalidity contentions and related disclosures based upon information obtained to date and available to it. SVPCo's invalidity contentions herein are *preliminary* in that they reflect SVPCo's knowledge, thinking and contentions as of this early date in the present action. Moreover, SVPCo notes that its investigation and review of prior art is ongoing, and, accordingly, SVPCo reserves the right to modify, amend, or otherwise supplement its contentions and disclosures as additional information becomes available during the course of this lawsuit.