UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DATATREASURY CORP.                     :
                                       :
                      Plaintiff,       :    No. 2-04CV-85
                                       :
          v.                           :    MOTION TO STAY
                                       :
SMALL VALUE PAYMENTS                   :    ORAL ARGUMENT REQUESTED
COMPANY                                :
                                       :
                      Defendant.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT SMALL VALUE PAYMENTS COMPANY'S MOTION TO STAY

COMES NOW Defendant Small Value Payments Company ("SVPCo")

and respectfully moves this Court for a stay of this action pending the outcome of

reexamination proceedings (the "Reexams") currently underway at the United States

Patent and Trademark Office ("PTO"), which may significantly affect the issues in this

litigation. The Amended Agreed Case Management Order entered on July 27, 2005, sets

a trial date of October 10, 2006. SVPCo respectfully requests that: (1) the trial date be

adjourned; (2) all proceedings in this case be stayed pending the outcome of the

Reexams; and (3) the parties be ordered to appear before this Court for a status

conference on October 10, 2006, to advise this Court on the progress of the Reexams. If,

prior to October 10, 2006, some result is reached on the Reexams, SVPCo will notify the

Court immediately. In support of its motion, SVPCo submits the following.

Datatreasury Corporation v. Small Value Payments Company                                    Doc. 36

## PRELIMINARY STATEMENT

Plaintiff DataTreasury Corporation ("DTC" or "DataTreasury") has sued a wide variety of banks and financial services institutions for allegedly infringing U.S. Patent Nos. 5,910,988 ("the '988 patent") and 6,032,137 ("the '137 patent"; collectively, the "patents-in-suit").  DataTreasury has garnered national attention both for its litigiousness and the expansive manner in which it has characterized the patents-in-suit to the press.[1]  However, the patents-in-suit have recently received some less favorable attention.

On January 6, 2006, the PTO granted ex parte requests for reexamination of each of the patents-in-suit (collectively, the "Requests"), submitted pursuant to 35 U.S.C. § 302.[2]  In granting the Requests, the PTO determined "[t]here are substantial new questions of patentability" regarding the patents-in-suit, questions which had not been considered during the original prosecution of the patents-in-suit.[3]  For the PTO, "the 'focus' of the reexamination[s] 'returns essentially to that present in an initial

---

[1]   The press has taken note of the number of infringement lawsuits DataTreasury has filed.  See Jennifer A. Kingson, Small Company is Specializing in Suing Banks, N.Y. TIMES, Dec. 25, 2004.  In press releases following settlement of some of its litigation, DataTreasury has characterized the patents-in-suit as describing "a technology process capable of implementing the federally enacted Check Clearing for the 21st Century Act, popularly known as Check 21."  See, e.g., Press Release, DataTreasury Corporation, World's Largest Maker of Electronic Transaction Terminals Settles With DataTreasury (Nov. 7, 2005) [hereinafter Press Release].  Some defendants with whom DataTreasury has settled have stipulated to the validity of the patents-in-suit as part of the consent judgment; however, those stipulations have no binding effect on the PTO in conducting its Reexams because, inter alia, the PTO is not required to presume that the patents-in-suit are valid in conducting the Reexams, as a federal court would be bound to do.

[2]   The Requests were submitted to the PTO on November 25, 2005, by defendants in case number 03-CV-00039 (the "First Data defendants").  Because SVPCo did not submit the Requests and is not participating in the Reexams, SVPCo hereby reserves its rights to continue challenging the validity of the patents-in-suit if necessary in this litigation.

[3]   The Orders of the PTO granting the Requests (the "Reexam Orders") are attached hereto as Exhibits 1 and 2.

examination.'" Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1427 (Fed. Cir. 1988) (citation omitted). Thus, the PTO does not presume that the patents-in-suit are valid, as a federal court would do.

The PTO is currently examining the very issues at the center of this lawsuit and the eight other lawsuits DataTreasury has filed in this District—the breadth of the claims of the patents-in-suit, and the invalidity of those claims. The Reexams may result in modification to and/or invalidation of some or all of the claims of the patents-in-suit, and thus the PTO's conclusions on the "substantial new questions of patentability" may directly impact how, and indeed if, the parties will resolve this lawsuit before the Court. In light of the significant impact the Reexams may have on the resolution of this dispute, SVPCo believes that a stay of this action until the Reexams are concluded is in the best interests of all the parties and this Court.

STATEMENT OF FACTS

This case was filed by DataTreasury on March 2, 2004. Although this case has been pending for some time:

- There has been no claim construction briefing;

- There is no Markman hearing scheduled;[4]

- There has been no expert discovery;

- There has been no disclosure of final invalidity or infringement contentions, and no date for such disclosure has been set;

- There have been no case-dispositive motions filed by either party;

---

[4] In related case numbers 5:02-CV-95; 5:02-CV-124; and 5:03-CV-39, Magistrate Judge Craven has issued a Report and Recommendation construing various terms of the patents-in-suit on November 2, 2004, which was subsequently adopted by this Court in an order signed on February 28, 2005. Nonetheless, many of the terms of the patents-in-suit are in dispute between the parties here.

- DataTreasury has not served a single document request, interrogatory, request for admission, or deposition notice; and

- Discovery is not set to close in this action until thirty-two weeks from the date of this Court's claim construction ruling.

The parties have exchanged several thousands of pages of documents thus far, but both parties have indicated that there may be a substantial amount of additional discovery yet to be taken if this litigation progresses. DataTreasury has recently voiced a desire to depose SVPCo witnesses. On January 12, 2006, DataTreasury amended its initial disclosures to identify for the first time hundreds of individuals with knowledge relevant to the issues in this action, from whom SVPCo may also seek discovery. SVPCo has already attempted to schedule with DataTreasury the deposition of Claudio R. Ballard, the named inventor of the patents-in-suit.

The parties have exchanged claim constructions and extrinsic evidence, although the parties were unable to agree on the preparation of a joint claim construction statement due on January 13, 2006. No claim construction briefs have been submitted, and a date for the Markman hearing has not been set.

On November 25, 2005, the First Data defendants submitted their Requests to the PTO, presenting to the PTO prior art patents and publications that had not been cited, made of record, or considered during the original prosecution of the patents-in-suit.[5] The PTO does not presume that the patents-in-suit are valid, as a district court

---

[5] The Requests of the First Data defendants followed closely on the heels of an action taken by the European Patent Office (the "EPO"), which is currently reviewing a companion patent application submitted by DTC that contains pending claims very similar to independent claims 1 and 26 of the patents-in-suit. The EPO rejected all of the pending claims, finding that the "subject-matter of [the] claims does not involve an inventive step"; in other words, that the claims were obvious and thus unpatentable over the prior art. The EPO's decision is attached hereto as Exhibit 3.

would, and it is DataTreasury which bears the burden of establishing the patentability of

its claims to the PTO.

 35 U.S.C. § 305 requires the PTO to act with "special dispatch" in

evaluating the pending Requests; adhering to that mandate, the PTO granted the Requests

and began its reexaminations on January 6, 2006. Upon learning of the PTO's Reexams,

SVPCo promptly filed the instant motion.

ARGUMENT

 District courts have inherent power to manage their dockets, and thus the

decision to stay a pending case is within the court's sound discretion. See Landis

v. N. Am. Co., 299 U.S. 248, 254 (1936). To decide a motion to stay, a court considers

whether: (1) the stay would simplify the issues of the case; (2) discovery is complete

and/or a trial date has been set; and (3) the stay would result in prejudice or a clear

tactical disadvantage to the nonmovant. See In re Cygnus Telecommunications Tech,

LLC, Patent Litig., 385 F.Supp. 2d 1022, 1023 (N.D. Cal. 2005). In addition, where the

stay being requested is in connection with a PTO reexamination, courts also consider the

technical expertise the PTO possesses in evaluating patents and prior art. See Bausch &

Lomb, Inc. v. Alcon Labs., Inc., 914 F. Supp. 951, 953 (W.D.N.Y. 1996); Loffland Bros.

Co. v. Mid-Western Energy Corp., No. CIV-83-2255-E, 1985 WL 1483, at *2 (W.D.

Okla. Jan. 3, 1985).

 Courts have recognized that the following benefits result from staying

patent litigation pending outcome of a PTO reexamination proceeding:

> 1. All prior art presented to the Court will have been first
> considered by the PTO, with its particular expertise.
> 2. Many discovery problems relating to prior art can be

-5-

> alleviated by the PTO examination. 3. In those cases
> resulting in effective invalidity of the patent, the suit will
> likely be dismissed. 4. The outcome of the reexamination
> may encourage a settlement without the further use of the
> Court. 5. The record of reexamination would likely be
> entered at trial, thereby reducing the complexity and length
> of the litigation. 6. Issues, defenses, and evidence will be
> more easily limited in pre-trial conferences after a
> reexamination. 7. The cost will likely be reduced both for
> the parties and the Court.

Emhart Indus. Inc. v. Sankyo Seiki Mfg. Co., Ltd., 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill.

1987). Likewise, when Congress enacted 35 U.S.C. § 301 et seq., it "noted its approval

of district courts liberally granting stays within their discretion . . . ." See GPAC, Inc. v.

D.W.W. Enters., Inc., 144 F.R.D. 60, 62 (D.N.J. 1992) (quoting 1980 U.S.C.C.A.N.

6460, 6463)).

I.    THE PARTIES AND THIS COURT WOULD ALL BENEFIT FROM A STAY
      OF THIS ACTION UNTIL THE CONCLUSION OF THE REEXAMS.

        If this litigation progresses, the parties and this Court will be working to

resolve the same issues the PTO is trying to resolve—the scope of the claims of the

patents-in-suit and the invalidity of those claims. A stay of this action avoids such

unnecessary duplication of effort, and allows the parties and this Court to benefit from

the PTO's expertise in this area. Bayer AG v. Novartis Crop Protection, Inc., Nos. 98-

996-C-M2, 99-279-B-M2, 2000 WL 1124513, at *3 (M.D. La. June 29, 2000) (staying

infringement litigation pending outcome of a PTO interference proceeding regarding the

patent-in-suit because "there is no reason why litigation between the same parties,

embracing common issues, should be prosecuted simultaneously"). Moreover, a decision

to stay this case might apply equally to the eight other DataTreasury patent lawsuits

currently pending before this Court, thus conserving a significant amount of this Court's

resources that might otherwise be dedicated to DataTreasury litigation.[6]

        A.     The Results of the Reexams Will Substantially Streamline the
             Issues the Parties Must Litigate and Present to this Court.

       The PTO's Reexams can have any of the following results—the patents-

in-suit could be invalidated in whole or in part; the claims could be narrowed or

modified; or the patents-in-suit could emerge entirely intact. See In re Cygnus, 385 F.

Supp. 2d at 1024; see also Loffland Bros., 1985 WL 1483, at *2.[7]  Any of those scenarios

can significantly impact this litigation, thus weighing heavily in favor of a stay of this

litigation until the PTO reaches a result. See Target Therapeutics, Inc. v. Scimed Life

Sys., Inc., No. C-94-20775 RPA (EAI), 1995 WL 20470, at *2 (N.D. Cal. Jan. 13, 1995)

("The final form of the claims therefore will remain uncertain until the conclusion of the

reexamination procedure.  It makes sense to ascertain the ultimate scope of the claims

before trying to figure out whether defendants' products infringe the patents-in-suit.");

see also Vitronics Corp. v. Conceptronic, Inc., 36 F. Supp. 2d 440, 442 (D.N.H. 1997)

("Because the PTO may clarify or entirely invalidate the [patents-in-suit] on

reexamination, a stay is appropriate so that the scope of the patent will be defined prior to

litigating the infringement claim.").  No matter what the result, the record from the

Reexams may be submitted as evidence in this action, upon which the parties and this

---

[6]  On November 7, 2005, when one of DataTreasury's patent lawsuits settled on the eve of trial, counsel
for DataTreasury voiced its intention to continue prosecuting the remaining cases by stating: "Our trial
team will now enforce [DataTreasury's] intellectual property rights . . . .  Let the trials begin!"  See Press
Release, supra at 2, n.1.

[7]  The one result that cannot come from the Reexams is an enlargement of the patent claims.  See Bloom
Eng'g Co. v. N. Am. Mfg. Co., 129 F.3d 1247, 1249 (Fed. Cir. 1997).

Court can rely as a "richer prosecution history upon which to base necessary claim construction determinations or reconsideration." In re Cygnus, 385 F. Supp. 2d at 1024; see also Perricone v. Unimed Nutritional Servs., Inc., No. CIV.A. 301CV512 (CFD), 2002 WL 31075868, at *2 (D. Conn. July 18, 2002).

Should any of the claims be invalidated, the dispute with respect to those claims ends because SVPCo cannot infringe an invalid claim. Union Pacific Resources Co. v. Chesapeake Energy Corp., No. CIV. A. 4:96-CV-726-Y, 1999 WL 33268422, at *7 (N.D. Tex. Sept. 21, 1999) (concluding that defendant "is entitled to a finding that it did not infringe" where patent was invalid); Borden v. Occidental Petroleum Corp., 381 F. Supp. 1178, 1207-08 (S.D. Tex. 1974) ("The authorities clearly point out that an invalid patent cannot be infringed.") (citations omitted); Daniel v. O&M Mfg. Co., 105 F. Supp. 336, 343 (S.D. Tex. 1952) ("An invalid patent cannot support a charge of infringement, because the patent must be valid before it can be infringed.") (citations omitted). Thus, if this Court stays this action until the Reexams are concluded, that decision may obviate the need for any additional expenditure of time, expense, and effort in resolving this litigation. See Emhart, 3 U.S.P.Q.2d at 1890 (noting that one benefit to staying infringement litigation pending outcome of a PTO reexamination is that a decision to invalidate the patents-in-suit may result in dismissal or settlement of the litigation).

Even short of complete invalidation, the results of the Reexams can significantly streamline the issues in dispute and the related discovery because the claims may nonetheless be narrowed or modified. See Perricone, 2002 WL 31075868, at *2 (noting that a PTO reexamination can invalidate the patent or require amendments to the

claims). DataTreasury believes that SVPCo literally infringes all ninety-three claims of

the patents-in-suit, so the parties will have to take discovery and make presentations to

this Court regarding ninety-three claims, all containing a myriad of elements. For

instance, independent claim 1 of the '988 patent purportedly claims:

> A system for central management, storage and report
> generation of remotely captured paper transactions from
> documents and receipts comprising: one or more remote
> data access subsystems for capturing and sending paper
> transaction data and subsystem identification information
> comprising at least one imaging system for capturing the
> documents and receipts and at least one data access
> subsystem controller for managing the capturing and
> sending of the transaction data; at least one central data
> processing subsystem for processing, sending, verifying
> and storing the paper transaction data and the subsystem
> identification information comprising a management
> subsystem for managing the processing, sending and
> storing of the transaction data; and at least one
> communication network for the transmission of the
> transaction data within and between said one or more data
> access subsystems and said at least one data processing
> subsystem, with the data access subsystem providing
> encrypted subsystem identification information and
> encrypted paper transaction data to the data processing
> subsystem.

The remaining independent claims of the patents-in-suit are equally

complex. To the extent that the Reexams narrow claims such as the one quoted above,

such a decision can only serve to simplify the issues in dispute. See, e.g., Vitronics, 36 F.

Supp. 2d at 442 (holding that a stay pending patent reexamination was appropriate

because the reexamination could "more precisely define the scope of [the disputed claim

which] . . . is central to the resolution of this case"); see also Nelson Seating Pty., Ltd. v.

Selle Royal S.P.A., No. 05 CIV 2389 (RMB), 2005 WL 3358598, at *2 (S.D.N.Y. Dec. 7,

2005) (denying motion to reconsider magistrate judge's stay of litigation pending

reexamination, noting that reexamination could reduce the complexity and length of the litigation); Alloc, Inc. v. Unilin Décor N.V., No. Civ. A. 03-253-GMS, 2003 WL 21640372, at *2 (D. Del. July 11, 2003) (granting stay pending patent reexamination because "with regard to the issue of efficiency, it is beyond dispute that the court would benefit from a narrowing of the numerous complex issues relating to claims, which, if clearly defined would streamline discovery and subsequent litigation").

> B.    The Expertise of the PTO in Evaluating Prior Art Will Also
>        Benefit the Parties and This Court.

The parties and this Court can also take advantage of the PTO's expertise in evaluating patents and prior art if this Court grants SVPCo's motion. See, e.g., Alloc, 2003 WL 21640372, at *2 (noting the "PTO's particular expertise in evaluating the prior art"). In providing for reexamination procedures, "[t]he rationale [was] to increase the reliability of the PTO's action in originally issuing the [patent-in-suit] by providing for the reexamination of those patents thought doubtful." Emerson Elec. Co. v. Davoil, Inc., 907 F. Supp. 1303, 1304 (E.D. Mo. 1995), rev'd on other grounds, 88 F.3d 1051 (Fed. Cir. 1996).[8] Accordingly, courts overseeing patent infringement litigation have consistently looked to the PTO's expertise in evaluating the validity of patents and reviewing the prior art. See GPAC, 144 F.R.D. at 63 ("In fact, the patent re-examination procedure was clearly intended to provide the federal courts with the expertise of the PTO."); see also Alloc, 2003 WL 21640372, at *2; Bausch & Lomb, 914 F. Supp. 951.

---

[8]   The district court in Emerson included in its order granting a stay a provision requiring the patentee to submit some of the accused infringer's court filings to the PTO in connection with the pending reexamination; that portion of the order was subsequently reversed by the Federal Circuit as an impermissible expansion of the district court's powers. See Emerson Elec. Co. v. Davoil Co., 88 F.3d 1051, 1053 (Fed. Cir. 1996).

The PTO's expertise is of particular importance here given the potentially far-reaching implications the patents-in-suit have on the manner in which banking, retail, and financial institutions process checks and other transactions. See, e.g., Lenteck Int'l, Inc. v. Sharper Image Corp., 169 F. Supp. 2d 1360, 1363 (M.D. Fla. 2001) ("[I]n view of the complexity of the underlying issues, the Court and the parties are still better served by receiving the technical expertise provided by the PTO."). In the press, DataTreasury has aggressively marketed the patents-in-suit as "technology enabl[ing] a bank to scan the check, send it and store it securely and even mine the data on the check." Tania Padgett, Lawsuit Over Check Imaging; LI Firm Battling J.P. Morgan, NEWSDAY, Oct. 22, 2003, at A41 (quoting DataTreasury counsel Ed Hohn). The technology DTC purports to claim "could save banks billions [of dollars]." Id. Thus, a decision on the alleged validity and breadth of the patents-in-suit will have a substantial impact throughout the financial services community, which weighs in favor of staying this litigation to await the PTO's expert evaluation of the patents-in-suit and the breadth of their coverage, if any.

II.    NO UNDUE PREJUDICE WILL RESULT FROM A BRIEF STAY OF THIS ACTION.

Stays are generally favored in this context, but where a stay would result in undue prejudice to the nonmoving party, courts may decline to stay the case. See Lentek, 169 F. Supp. 2d at 1362. A stay in this case will not result in prejudice to DataTreasury for the following reasons.

First, the stay SVPCo is requesting is not likely to be of a lengthy, indeterminate amount of time given that the PTO is statutorily obligated to complete the Reexams with "special dispatch." 35 U.S.C. §305; see also Gould v. Control Laser

Corp., 205 F.2d 1340, 1341 (Fed. Cir. 1983) (noting that "[t]he present stay is not for such a protracted or indefinite period as to render its issuance an abuse of discretion"). Ex parte reexamination filing data as of September 30, 2005, indicates that the median pendency time between the filing of a request for reexamination to the issuance of a certificate from the PTO was 17.2 months.[9] As stated above, see discussion supra at 1, SVPCo would like this Court to revisit the status of the Reexams at the originally scheduled trial date of October 10, 2006, and SVPCo will advise this Court immediately of any activity from the PTO on the Reexams prior to October 2006.

Second, the stay SVPCo is requesting does not affect DataTreasury's ability to pursue its claims, nor does it prejudice DataTreasury in its efforts to prosecute its case. If this Court grants the instant motion, DataTreasury nonetheless maintains all of its rights of review on the merits of its patent infringement allegations, if any. As the Federal Circuit noted in Gould, "stays to enable reexamination do not foreclose review on the merits by a federal court [because] the [d]istrict court and PTO decisions on the merits are both reviewable by [the Federal Circuit]." Id. Thus, the stay does not prevent DataTreasury from pursuing its claims should there be any merit to doing so; the stay "merely shift[s] to the PTO an issue [patent claim validity] involved in the dispute before the district court." Id. at 1342. In addition, given that DataTreasury is primarily pursuing

---

[9]  Counsel for SVPCo received the cited statistics from the Legal Department of the PTO, and they are attached hereto as Exhibit 4.

monetary, as opposed to injunctive, relief, a stay of this action does not prejudice DataTreasury's ability to recover for any alleged losses.[10]

The delay that would result from a stay of this action does not unduly prejudice DataTreasury, which has not actively pursued its claims since it filed this lawsuit nearly two years ago. See, e.g., Bayer, 2000 WL 1124513, at *3 (noting that the nonmovant had no valid claim of prejudice to defeat a motion to stay where, although the lawsuit had been filed in 1998, the case "sat dormant for months"). When pressed for a definitive position on its infringement claims, DataTreasury's persistent refrain has been that it needs "formal discovery"; yet, DataTreasury has never pursued any such discovery nor suggested that any discovery it needs must be had now. In its Opposition to SVPCo's Motion to Compel Preliminary Infringement Contentions, DataTreasury has expressed a need to conduct "further investigation" into its allegations; a stay of this action should provide DataTreasury with the perfect opportunity to review the documents SVPCo produced months ago and undertake such "further investigation."

Third, because many of the critical milestones for this case have not yet passed, a stay of this action would not mean that any significant amount of time, effort, and expense already expended by the parties or this Court will be wasted. See Werre v. Battenfeld Techs. Inc., No. Civ. 03-1471-AA, 2004 WL 2554568, at *1 (D. Or. Nov. 9, 2004) (granting stay pending outcome of PTO reexamination where, inter alia, "no depositions, expert discovery, claim construction, or dispositive motions [had been] filed"). As stated above, see discussion supra at 3:

---

[10]   DataTreasury is, of course, hindered in its ability to recover anything in this action to the extent that its claims are meritless.

-13-

- There has been no claim construction briefing;

- There is no Markman hearing scheduled;

- There has been no expert discovery;

- There has been no disclosure of final invalidity or infringement contentions, and no date for such disclosure has been set; and

- There have been no case-dispositive motions filed by either party.

Before the parties begin preparing their respective claims and defenses in earnest, this Court should stay the litigation in favor of the PTO's current Reexams.

SVPCo is not seeking a protracted stay of this litigation in order to put DataTreasury at any tactical disadvantage; instead, SVPCo is simply requesting that this Court defer its consideration of the complex issues in this action for a period of time sufficient to allow the PTO to reach a conclusion on the Reexams that are already underway. The stay SVPCo is requesting will serve only to benefit both parties and this Court, and if this Court adopts and applies the reasoning set forth by SVPCo here, the Court may save itself and DataTreasury the need to resolve the same issues of invalidity and noninfringement in eight other lawsuits.

<u>CONCLUSION</u>

In light of the foregoing, SVPCo respectfully requests that: (1) the trial date be adjourned; (2) all proceedings in this case be stayed pending the outcome of the Reexams; and (3) the parties be ordered to appear before this Court for a status conference on October 10, 2006, as well as any additional and further relief this Court deems just and proper.

Dated: January 27, 2006                        Respectfully submitted,

Preston W. McGee
Flowers Davis, P.L.L.C.
1021 ESE Loop 323
Suite 200
Tyler, Texas 75703
(903) 534-8063

Of Counsel:
James H. Carter
James T. Williams

SULLIVAN & CROMWELL LLP

125 Broad Street
New York, New York 10004
(212) 558-4000

Lawrence F. Scinto

*Attorneys for Defendant and Counterclaimant
Small Value Payments Company*

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

Lawrence F. Scinto
Ronald A. Clayton
FITZPATRICK, CELLA, HARPER & SCINTO
30 Rockefeller Plaza
New York, New York 10112-3801
(212) 218-2254

*Attorneys for Defendant and Counterclaimant Small Value Payments Company*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Stay has been served on all counsel of record by certified mail, return receipt requested on this the 27th day of January, 2006.

_____
Preston W. McGee

## CERTFICATE OF CONFERENCE

The undersigned certifies that on January 27, 2006, he conferred with Opposing Counsel, Neil Smith in a good faith attempt to resolve this matter without court intervention. Neil Smith confirmed in our conversation that Plaintiff could not yet agree to this Motion, which is therefore opposed at this time.


_____

Preston W. McGee