# Exhibit 1



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/007,829 | 11/25/2005 | 5910988 | | 5961 |

| 24023 | 7590 | 01/06/2006 |
|---|---|---|

MCGUIREWOODS LLP
ONE JAMES CENTER
901 EAST CARY STREET
RICHMOND, VA  23219-4030

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 01/06/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

1/6/2006

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

JEFFREY P. KUSHAN

SIDLEY AUSTIN BROWN & WOOD LLP

1501 K STREET, NW

WASHINGTON, DC 20005

## *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO 90/007829
PATENT NO. 5,910,988
ART UNI 3900

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

1/6/2006

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

JEFFREY P. KUSHAN
SIDLEY AUSTIN BROWN & WOOD LLP
1501 K STREET, NW
WASHINGTON, DC  20005

# EX PARTE REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO 90/007829

PATENT NO. 5,910,988

ART UNI  3900

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/007,829 | Patent Under Reexamination 5910988 |
|---|---|---|
| | Examiner Michael O'Neill | Art Unit 3993 |

--*The MAILING DATE of this communication appears on the cover sheet with the correspondence address*--

The request for *ex parte* reexamination filed <u>25 November 2005</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐ PTO-892,   b)☒ PTO-1449,   c)☐ Other: _____

1. ☒  The request for *ex parte* reexamination is GRANTED.

    RESPONSE TIMES ARE SET AS FOLLOWS:

    For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

    For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐  The request for *ex parte* reexamination is DENIED.

    This decision is not appealable (35 U.S.C. 303(c)). Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE REGULATIONS UNDER 37 CFR 1.183.

    In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐ by Treasury check or,

    b) ☐ by credit to Deposit Account No. _____, or

    c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Michael O'Neill
CRU Examiner
Art Unit: 3993

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 04-01)       Office Action in Ex Parte Reexamination       Part of Paper No. 12232005

Application/Control Number: 90/007,829                                                                 Page 2
Art Unit: 3993

**DECISION**

A substantial new question of patentability affecting claims 1-50 of United States Patent Number 5,910,988 is raised by the request for *ex parte* reexamination.

*Service of Papers*

After the filing of a request for reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248. See 37 CFR 1.550(f).

*Waiver of Right to File Patent Owner Statement*

In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530 to file a Patent Owner Statement. The document needs to contain a statement that Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third party requester, see 37 C.F.R 1.550(f). The Patent Owner may consider using the following statement in a document waiving the right to file a Patent Owner Statement:

**WAIVER OF RIGHT TO FILE PATENT OWNER STATEMENT**

Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement.

*Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

Application/Control Number: 90/007,829                                                                                    Page 3
Art Unit: 3993

reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

### *Amendment in Reexamination Proceedings*

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c).

### *Submissions*

In order to insure full consideration of any amendments, affidavits or declarations or other documents as evidence of patentability, such documents must be submitted in response to the first Office action on the merits (which does not result in a close of prosecution). Submissions after the second Office action on the merits, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and by 37 CFR 41.33 after appeal, which will be strictly enforced.

### *Notification of Concurrent Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a), to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 5,910,988 throughout the course of this reexamination proceeding. Likewise, if present, The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 90/007,829                                                             Page 4

Art Unit: 3993

### *Request's Indications*

The request indicates that Requester considers:

Claims 46-50 are unpatentable over Campbell et al., USPN 5,373,550, (Campbell).

Claims 46-50 are unpatentable over Geer, USPN 5,930,778, (Geer).

Claims 42-45 are unpatentable over Campbell.

Claims 42-45 are unpatentable over the Minoli publication entitled "Imaging in Corporate Environments: Technology and Communication", (Minoli).

Claims 1 and 26 are unpatentable over Campbell.

Claims 2, 16, 18, 27 and 29 are unpatentable over Campbell.

Claims 3-8 and 28 are unpatentable over the combination of Campbell and admitted prior art, (APA).

Claims 9, 11-15, 19, 30-32 are unpatentable over the combination of Campbell, Owens, USPN 4,264,808, (Owens) ("old art" view in a new light) and Minoli.

Claims 17, 22-25 and 37 are unpatentable over the combination of Campbell and Minoli.

Claims 10 and 33 are unpatentable over the combination of Campbell, Owens and Minoli.

Claims 20 and 21 are unpatentable over the combination of Campbell and Minoli.

Claims 36 and 38-41 are unpatentable over Campbell.

Claims 1 and 26 are unpatentable over ANSI/ABS X9.46-1995, version 0.13 (ANSI-draft or ANSI-1995) and ANSI X9.46-1997, referred to (ANSI Standard or ANSI-1997).

Application/Control Number: 90/007,829 Page 5
Art Unit: 3993

*Substantial New Question*

There are substantial new questions of patentability (SNQP) is based on Campbell, Geer, Minoli, ANSI/ABS X9.46-1995, v. 0.13, and ANSI X9.46-1997. A discussion of the specifics now follows:

It is agreed that the consideration of Campbell raises an SNQP as to Claims 46-50 of the Ballard patent ('988 patent or Ballard). As pointed out in the request on pages 7-9, Campbell teaches as illustrated in figure 1 checks are scanned at a first bank, the check images are transmitted from the first bank to a check processing node (12), such as a clearinghouse, and images are further transmitted to a second bank. Campbell further teaches that image data may be transmitted between and among a remote, intermediate and central location, this can be considered a tiered or layered configuration. Moreover, Campbell teaches data extraction from the captured check images through character recognition capabilities at a sending location. Thus, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, Campbell raises an SNQP as to Claims 46-50, which has not been decided in a previous examination of the Ballard patent.

It is agreed that consideration of Geer raises an SNQP as to Claims 46-50 of the Ballard patent. As pointed out in the request on pages 9-10, Geer teaches a three tiered configuration with a first location (2) with electronic scanning means; the payee's depository bank (10); and the payment system (12), as shown in Figure 1. As taught in col. 5:25-31, "[i]nformation pertaining to checks and/or the cash letters in anticipation of a deposit in the payee's account corresponding to a cash letter (or cash letters) is transmitted from the payee to the collecting and

Application/Control Number: 90/007,829                                                                     Page 6
Art Unit: 3993

clearing depository bank." As taught in col. 9:1-10, "[t]his image of the check may also be transmitted electronically to the bank along with the other information extracted from the check." As taught in col. 9:27-30, "[t]he electronic check information ... is sent via an appropriate communication link (15) into the payment system (12)." Thus, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, Geer raises an SNQP as to Claims 46-50, which has not been decided in a previous examination of the Ballard patent.

It is agreed that the consideration of Campbell raises an SNQP as to Claims 42-45 of the Ballard patent. As pointed out in the request on pages 10-11, Campbell teaches the existence of three subsystems, one at each of the sending bank (14), the node (12) and the receiving bank (16), each having the existence of a transmitting means for transmitting images between the three subsystems in a tiered architecture, see e.g. Figure 1 with respect to the directional arrows of the communications lines (22,24,26,28) as well as Figure 2 directional arrows. Further pointed out in the request is that Campbell on col. 4:56-58 teaches that the check imaging equipment (18) and (32) maybe part of "large multiworkstation systems" which by design would be multiple components interconnected by a local area network (LAN). Thus, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, Campbell raises an SNQP as to Claims 42-45, which has not been decided in a previous examination of the Ballard patent.

It is agreed that the consideration of Minoli raises an SNQP as to Claims 42-45 of the Ballard patent. As pointed out in the request on pages 12-13, Minoli in Figure 2.6 shows hardware that may be used with wide area networks (WAN)s. Also, as pointed out in the

Application/Control Number: 90/007,829                                                           Page 7
Art Unit: 3993

request, Minoli teaches that a typical remote image capture application in the banking industry "involves (1) scanning of documents at branch offices for transmission to a host computer at the main office of the central site." See Minoli, page 20. As shown in Figure 2.6, there is taught a three tier architecture configuration, one tier corresponding to the "Scan" segment, another corresponding to a "Utilities" segment, and a third corresponding to an "Access" segment. As shown in Figure 2.6, for the images in the "Scan" segment to be transmitted to the "Access" segment, they must be routed through the "Utilities" segment. Thus, Minoli teaches transmission of images from one LAN to another LAN, and then from that LAN to another LAN in a tiered or layered configuration. Thus, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, Minoli raises an SNQP as to Claims 42-45, which has not been decided in a previous examination of the Ballard patent.

It is agreed that the consideration of Campbell raises an SNQP as to Claims 1 and 26 of the Ballard patent. As pointed out in the request on pages 13-15, Campbell teaches a remote data access subsystem, the sending bank (14), see col. 3:10-12. In col. 5:23-28, Campbell teaches that a "controller (42) may read some data accompanying check images, for example, it may identify that TCP/IP protocol information accompanying those images. That information may instruct the node about the identity of the sending institution and the intended receiving institution." Thus, Campbell teaches images of document, such as checks, and subsystem identification information, i.e. accompanying identifiers, are transmitted from a remote data access subsystem. In col. 3:43-58, Campbell teaches a "processing node (12) receives check images and performs certain processing procedures on those images, including at least temporary

storage of the received check images." It is noted in col. 3:30-39 that the processing node (12) "transmits frames of digital information representing check images to the network (38) after those images have been processed by the node (12). A node controller and router (42) control the routing of check images to their intended destinations, both in the controller and to their ultimate destinations outside the network (38)." Thus, Campbell appears to teach a central data processing subsystem. Campbell in col. 2:20-22 and 50-63 appears to teach a communication network that send images: "The public switched telephone network (10) may be ... electrically or optically based or ... may be digital or analog. Two examples of suitable digital networks are a packet network and a frame relay network." Campbell also teaches a "controller (42) may also be configured to handle information encrypted by sending institutions to provide security for the images transported by the network (38). The controller (42) may have its own encryption and decryption equipment to provide a secure environment in the node (12)." Thus, it appears that Campbell teaches encrypting images and subsystem identification information for securing the information contained therein. Thus, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, Campbell raises an SNQP as to Claims 1 and 26, which has not been decided in a previous examination of the Ballard patent.

It is agreed that the consideration of Campbell raises an SNQP as to Claims 2, 16, 18, 27 and 29 of the Ballard patent. As pointed out in the request on pages 16-17, Campbell teaches scanner means in col. 2:64 - col. 3:12; a data collecting subsystem in Figure 2 and col. 2:46-49; a tagged, encrypted and compressed bitmap image in col. 7:15-27; and plural remote and central locations in col. 2:27-49. Also, Campbell teaches a first and second LANs and a WAN for

Application/Control Number: 90/007,829 Page 9
Art Unit: 3993

transmitting data between the systems taught within Campbell, see col. 3:10-31; col. 4:56-58 and col. 2:61 for the teaches of the LANs and WAN respectively. In Figure 2, Campbell teaches an intermediary between a remote and a central system; also, of note is col. 2:46-49 which teaches "[o]ne or both institutions (14) and (16) may also be any intermediary institution in the forward and reverse check clearance flows between a bank of first deposit and a payor bank." Thus, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, Campbell raises an SNQP as to Claims 2, 16, 18, 27 and 29, which has not been decided in a previous examination of the Ballard patent.

It is agreed that the consideration of the combination of Campbell and APA raises an SNQP as to Claims 3-8 and 28 of the Ballard patent. As pointed out in the request on pages 17-18, the Ballard patent in col. 6:46-60 teaches that "[a]s is known to persons of ordinary skill in the art, DAT 200 could also included additional devices for capturing other biometric data for additional security. These devices include facial scans, fingerprints, voice prints, iris scans, retina scans and hand geometry." Campbell teaches in col. 7:15-27 compressed tagged images; and, in col. 6: 57-60 digital storage. Furthermore, the Ballard patent teaches that DATAGLYPH is well known to those in the art, see col. 5:58 - col. 6:6. Thus, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, the Campbell and APA combination raise an SNQP as to Claims 3-8 and 28, which has not been decided in a previous examination of the Ballard patent.

Application/Control Number: 90/007,829                                                    Page 10
Art Unit: 3993

It is agreed that the consideration of the combination of Campbell, Owens and Minoli raises an SNQP as to Claims 9, 11-15, 19 and 30-32 of the Ballard patent. As pointed out in the request on pages 18-20, Minoli teaches a "polling server". This teaching causes the teachings of Owens with respect to its "polling server" (col. 12:12-16); the database (col. 12: 18-27; the report generator (col. 14:12-18); the CPU (col. 12:27-36); the domain name services program (col. 21:23-27) and the memory hierarchy (col. 12:23-27) to be viewed in a new light with the teachings of Minoli as to its teachings of a domain name services program, see pages 248-249, along with the "polling server" teaching found on pages 33 and 350 in Minoli. Minoli teaches using WORM jukebox and optical storage jukebox to store check images, see pages 30-31 of Chapter 7. On page 33, Minoli teaches CD-ROM optical storage being faster than video servers. Thus, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, the Campbell, Owens and Minoli combination raise an SNQP as to Claims 9, 11-15, 19 and 30-32, which has not been decided in a previous examination of the Ballard patent.

It is agreed that the consideration of the combination of Campbell and Minoli raise an SNQP as to Claims 17, 22-25 and 37 of the Ballard patent. As pointed out in the request on page 20, Minoli teaches that it was well known to use modem connections to connect LANs to LANs and WANs, see Minoli page 263. Minoli also teaches that several LANs may be interconnected through a WAN, such as in a banking or check processing environment, see Minoli pages 31; 269-271. Minoli also teaches hardware that is typical of a communication network: a modem, page 263; banks of modems, page 263; routers, page 269; a carrier cloud using a frame relay, page 268; and a network switch, page 268. Campbell teaches polling on col. 30:30-39; storing

Application/Control Number: 90/007,829 Page 11
Art Unit: 3993

on col. 3:43-58; and both Campbell on col. 4:30-39 and Minoli on pages 248-249 teach dynamically assigning. Thus, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, the Campbell and Minoli combination raise an SNQP as to Claims 17, 22-25 and 37 which has not been decided in a previous examination of the Ballard patent.

It is agreed that the consideration of the combination of Campbell and APA raise an SNQP as to Claims 10 and 33 of the Ballard patent. As pointed out in the request on page 21, it is taught in the Ballard patent that biometric and signature data are well know additions to a remote capture system, see col. 6:46-60. Thus, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, the Campbell and APA combination raise an SNQP as to Claims 10 and 33 which has not been decided in a previous examination of the Ballard patent.

It is agreed that the consideration of the combination of Campbell, Owens and Minoli raise an SNQP as to Claims 34 and 35 of the Ballard patent. As pointed out in the request on page 21, in Figure 1 Campbell teaches transmitting within a remote subsystem. In col. 2:26-32 Campbell teaches transmitting between the remote and central subsystems. In col. 3:41-52 Campbell teaches transmitting within the central subsystem. In col. 3:20-43 Campbell teaches connecting the remote to the central subsystem. In col. 3:32-52 Campbell teaches connecting the central subsystem to the remote subsystem. Thus, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not these claims are patentable. Accordingly, the Campbell, Owens and Minoli combination raise an

Application/Control Number: 90/007,829                                              Page 12
Art Unit: 3993

SNQP as to Claims 34 and 35 which has not been decided in a previous examination of the Ballard patent.

It is agreed that the consideration of the combination of Campbell and Minoli raise an SNQP as to Claims 20 and 21 of the Ballard patent. As pointed out in the request on page 21, in col. 7:6-8 Campbell teaches temporary and long-term archiving of the images at the check process node (12). Minoli on page 219 teaches several image storage systems including: CD-ROMs, WORMs, recordable CD, and magnetooptic (Mo) storage. Thus, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not these claims are patentable. Accordingly, the Campbell and Minoli combination raise an SNQP as to Claims 20 and 21 which has not been decided in a previous examination of the Ballard patent.

It is agreed that the consideration of Campbell raises an SNQP as to Claims 36 and 38-41 of the Ballard patent. As pointed out in the request on page 21-22, Campbell teaches a collecting step at an intermediary bank (14), see col. 2:46-49. Campbell teaches the connection and transmission among three tiers, specifically a bank (14), a node (12) and a bank (16), see Campbell, col. 2:25-33 and 50-63 and col. 3:30-39. Thus, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not these claims are patentable. Accordingly, Campbell raises an SNQP as to Claims 36 and 38-41 which has not been decided in a previous examination of the Ballard patent.

It is agreed that the consideration of ANSI/ABA X9.46-1995, Draft version 0.13 (ANSI-1995) and ANSI X9.46-1997 (ANSI-1997) raise an SNQP as to Claims 1 and 26 of the Ballard patent. As pointed out in the request on pages 26-28, the ANSI/ABA X9.46 standard describes

Application/Control Number: 90/007,829 Page 13
Art Unit: 3993

an electronic data interchange protocol for the exchange of electronic digitized images of financial documents among different financial institutions involved in a payment transaction. As taught in ANSI-1995, pages 15-16 and ANSI-1997, page 16 "[p]ackaged interchange content is delivered from the originating imaging application's financial image interchange translator to the receiving imaging application's financial image interchange translator ... through a computer network by transmitting the ... data electronically." As taught in ANSI-1995, page 14 and ANSI-1997, pages 14-15, functional groups are packaged and interchanged between financial institutions. One type of functional group is "item views", see ANSI-1995, page 14 and ANSI-1997, page 14. "Items views" include imaged items, such as checks or other financial documents. *Id.* As taught in ANSI-1995, page 105 and ANSI-1997, page 105 a data element known as "creation computer" which "conveys the system name of the originator's host computer that was used to created and digitize the imaging data" may be transmitted. As taught in ANSI-1995, page 57 and ANSI-1997, page 57 "[e]ncryption key name ... conveys the name of the key used to encipher the contents of this functional group. The name is mutually known to the security originator and the security recipient, is unique for this relationship, and allows a particular key to be specified." As taught in ANSI-1995, page 14 and ANSI-1997, page 14, as to figure 3 which shows the relationship between a functional group and its components and a transaction set and its components and as taught in ANSI-1995, page 33 and ANSI-1997, page 33, as to figure 9 which shows the contents of the item views functional group (captured image and creation computer) whereby the combination of the two figures teach an encryption of both image and subsystem identification information. Thus, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not these

claims are patentable. Accordingly, ANSI-1995 and ANSI-1997 raise an SNQP as to Claims 1 and 26 which has not been decided in a previous examination of the Ballard patent.

### *Issues not within Scope of Reexamination*

It is noted that an issue not within the scope of reexamination proceedings has been raised: how the Patent Owner is representing the breadth of the claims. The issue will not be considered in a reexamination proceeding. 37 CFR 1.552(c). While this issue is not within the scope of reexamination, the patentee is advised that it may be desirable to consider filing a reissue application provided that the patentee believes one or more claims to be partially or wholly inoperative or invalid based upon the issue.

### *Conclusion*

Per MPEP § 2258 all "live" claims are reexamined during reexamination.

Application/Control Number: 90/007,829 — Page 15
Art Unit: 3993

## *Communications*

Please mail any communications to:

>  Attn: Mail Stop "Ex Parte Reexam"
>  Central Reexamination Unit
>  Commissioner for Patents
>  P. O. Box 1450
>  Alexandria, VA 22313-1450

Please FAX any communications to:

>  (571) 273-9900
>  Central Reexamination Unit

Please hand-deliver any communications to:

>  Customer Service Window
>  Attn: Central Reexamination Unit
>  Randolph Building, Lobby Level
>  401 Dulany Street
>  Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

*[signature]*

Michael O'Neill
CRU Examiner
GAU 3993
(571) 272-4442

CONFS: *[initials]*