IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | NO. 2:04cv85-DF |
| | § | |
| SMALL VALUE PAYMENTS | § | |
| COMPANY, | § | |
| *Defendant.* | § | |

**<u>PLAINTIFF DATATREASURY CORPORATION'S RESPONSE AND
OPPOSITION TO DEFENDANT SMALL VALUE PAYMENT COMPANY'S
MOTION TO STAY</u>**

## TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, 1994 U.S. Dist.
   LEXIS 4130 (S.D. N.Y. Apr. 6, 1994)……………………….…….………6,13

*Accord Output Technology Corp. v. Dataproducts Corp.*, 1991 U.S. Dist.
   LEXIS 20168 (W.D. Wa. Nov. 25, 1991)…………..……………….……….7

*Agar Corp. v. Multi-Fluid, Inc.*, 983 F.Supp.1126 (S.D. Tex. 1997)…………6,20

*Amphenol T & M Antennas, Inc. v. Centurion Intn'l, Inc.*, 2001 U.S. Dist.
   LEXIS 13795 (N.D. Ill. Sep. 5, 2001)…………………………….……...6,8,19

*Ariad Pharm., Inc. v. Mass. Inst. Of Tech.*, 2005 U.S. Dist.
   LEXIS 10941 (D. Mass. Jun. 6, 2005)……………………………………6

*Arthrocare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615
   (D. Del. 2004) …………………………………………………………..13

*Castanho v. Jackson Marine, Inc.*, 484 F. Supp. 201 (E.D. Tex. 1980)…………5

*CF NexMed Holdings, Inc. v. Block Investment, Inc.*, 2006 U.S. Dist.
   LEXIS 3150 (D. Ut. Jan. 19, 2006)…………………………...……….…….6

*Cognex Corp. v. Nat'l Instruments Corp.*, 2001 U.S. Dist. LEXIS 25555
   (D. Del. Jun. 29, 2001)………………………………………...…….6,19

*Dow Chem. Co. v. Astro-Valcour, Inc.*, 110 F. Supp. 2d 104
   (N.D. N.Y. 2000)……………………………………………………..13

*Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 1987 U.S. Dist.
   LEXIS 15033 (N.D. Ill. Feb. 2, 1987)……………………………………16

*Enprotech Corp. v. Autotech Corp.*, 1990 U.S. Dist. LEXIS
   (N.D. Ill. 1990)……………………………………………………..15

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988)………..…………….11

*Gladish v. Tyco Toys, Inc.*, 1993 U.S. Dist. LEXIS 20211
   (E.D. Cal. Sep. 16, 1993)…………………………….…………6,16,19, 20

*Hoechst Celanese Corp v. BP Chemicals, Ltd.*, 78 F. 3d 1575
(Fed. Cir.), *cert. denied*, 519 U.S. 911 (1996)…………………………………7

*IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030
(C.D. Cal. 2005)…………………….....…………………………….5,6,15,16

*In Re: Columbia Univ. Patent Litigation*, 330 F. Supp. 2d 12
(D. Mass. 2004)……………………………………………………………6,14,15

*Jain v. Trimas Corp.*, 2005 U.S. Dist. LEXIS 28950 (E.D. Cal. Sep. 27, 2005)….6

*Landis v. N. Amer. Co.*, 299 U.S. 248 (1936)…………………………………….……5

*Motorola Inc. v. STMicroelectronics*, E.D.T.X. No. 1:03-cv 0407……..….....……9

*NexMed Holdings, Inc. v. Block Investment, Inc.*, 2006 U.S. Dist.
LEXIS 3150 (D. Ut. Jan. 19, 2006)…………………………………....…..…8

*NTP, Inc. v. Research In Motion, Ltd.*, 397 F.Supp.2d 785
(E.D. Va. 2005) ………………………………………………………..5

*NTP, Inc. v. Research In Motion, Ltd.*, 397 F.Supp.2d 785
(E.D. Va. 2005)………………………………………………………..….6,8

*Output Technology Corp. v. Dataproducts Corp.*, 1991 U.S. Dist.
LEXIS 20168 (W.D. Wa. Nov. 25, 1991) ………………….………………..13

*San Giacomo N.A., Ltd. v. Pilliod Furniture, Inc.*, 1996 U.S. Dist
LEXIS 14440 (M.D. N.C. Aug. 13, 1996)………………………………6,15

*Soverain Software LLC v. Amazon.Com*, 356 F.Supp.2d 660
(E.D. Tex. 2005)……………………………………………….........3,5,6,10,11

*Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F. Supp. 751
(E.D. N.Y. 1995)………………………………………………………..13

*Translogic Tech., Inc. v. Hitachi, Ltd.*, 2005 U.S. Dist. LEXIS 38853
(D. Or. Dec. 13, 2005)……………………………………………6,8,13

*Viskase Corp. v. Amer. Nat'l Can Co.*, 261 F.3d 1316
(Fed. Cir. 2001)…………………………………………………………………5

*Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404
(W.D. N.Y. 1999)…..………………………………………… 6,8,14

**OTHER AUTHORITIES**

Check Technology Case Stays in Texas, IP Law Bulletin, Oct. 13, 2005....................2

DataTreasury Suits Staying Put, American Banker, Oct. 24, 2005...........................2

DataTreasury Wins Another Round, Electronic Payments Week,
    Nov. 15, 2005.................................................................................1

David Slays Another Goliath in Check-Imaging Infringement Cases, Digital
    Transactions, Nov. 7, 2005....................................................................2

JPM Settles in Check 21 Patent Battle, American Banker, Jul. 7, 2005......................2

J.P. Morgan Chase Settles Patent Claims, New York Times, Jul. 7, 2005....................2

JP Morgan Settles Patent Suit Over Check Imaging Process, Wall Street Journal,
Jul. 7, 2005...................................................................................2

Manual of Patent Examining Procedure, Sec. 1901.06 (8th ed. 2d rev.)..............19

Melville Company Takes on Nation's Largest Banks in Court Over Check 21 Rules,
    Long Island Business News, Oct. 14, 2005..................................................2

Patent Infringement Win Has Implications for Check 21 Implementation, The Green
    Sheet, Jul. 28, 2005..........................................................................2

COMES NOW DataTreasury Corporation ("DataTreasury"), Plaintiff in the above-entitled and numbered civil action, and files the instant Response and Opposition to the Motion to Stay filed January 27, 2006 by Defendant Small Value Payments Company ("SVPCo").

## INTRODUCTION

For several years, "a wide variety of banks and financial services institutions" (*quoting* SVPCo Motion to Stay, pg. 2) have been infringing patents duly issued by the United States Patent and Trademark Office ("USPTO") and held by DataTreasury. Since 2002, DataTreasury has sought redress for these widespread and ongoing infringing actions in the courts of the Eastern District of Texas. The press has taken note of DataTreasury's "courtroom war to enforce its patent[s] on the ideas comprising much of the check-imaging business."[1] A series of articles has chronicled the significant number and the breadth of companies within and outside the financial industry which have conceded the validity, enforceability, and infringement of DataTreasury's patents. Those concessions have come through the settlement of lawsuits, and by licensing agreements outside the litigation arena.[2]    Machinations by various defendants to derail the

---

[1] DataTreasury Wins Another Round, Electronic Payments Week, Nov. 15, 2005 (Exhibit A).
[2] *See, inter alia*: *Id.* "DataTreasury ... won another round last week when France's Groupe Ingenico settled with DataTreasury on the day of trial and agreed to a licensing agreement. The last-minute deal brings to six the number of such settlements: previously, J.P. Morgan Chase & Co., Bank One, NetDeposit, Inc., RDM Corp. and ACS Corp. surrendered to DataTreasury ..."; David Slays Another Goliath in Check-Imaging Infringement Cases, Digital Transactions, Nov. 7, 2005 (Exhibit B); Melville Company Takes on Nation's Largest Banks in Court Over Check 21 Rules, Long Island Business News, Oct. 14, 2005 (Exhibit C); Patent Infringement Win Has Implications for Check 21 Implementation, The Green Sheet, Jul. 28, 2005 (Exhibit D); JPM Settles in Check 21 Patent Battle, American Banker, Jul. 7, 2005 (Exhibit E); JP Morgan Settles Patent Suit Over Check Imaging Process, Wall Street Journal, Jul. 7, 2005 (Exhibit F); J.P. Morgan Chase Settles Patent Claims, New York Times, Jul. 7, 2005 (Exhibit G); Will Zions' Check 21 Patent Deal Lead to More?, American Banker, Jun. 20, 2005 (Exhibit H).

DataTreasury litigation or to move the suits outside the Eastern District of Texas have failed.[3]

These efforts to avoid reckoning in DataTreasury's chosen forum continue. Several defendants with looming trial dates have asked the Court to stay the ongoing DataTreasury litigation. They argue that the lawsuits ongoing before this Court should be shelved because one defendant, First Data Corporation, veered off course en route to the Texarkana federal courthouse and filed with the USPTO for reexamination of the '988 and '137 patents. SVPCo was the first to advance this position, with the Motion to Stay opposed herein. These latest attempts to bottle up this litigation should be rejected. While SVPCo's arguments in support of the requested stay are misplaced, and will be addressed in turn, there is an additional, critical new factor weighing strongly against SVPCo's stay motion. On Friday, February 24, 2006, DataTreasury filed a new lawsuit against various defendants, including SVPCo, for infringement of additional patents recently acquired by DataTreasury. (EDTX Cause No. 2:06cv72 (DF); *see also* Exhibit K). As a result, the parties to this action will be litigating against one another in the Eastern District of Texas regardless of the reexamination proceedings recently requested by First Data Corporation. Accordingly, SVPCo's efficiency and cost arguments have been rendered moot.[4] DataTreasury will soon file a motion to consolidate the above-captioned suit with this new litigation, regarding United States Patent No. 5,265,007 ("the

---

[3] DataTreasury Suits Staying Put, American Banker, Oct. 24, 2005 (Exhibit I) ("A judge in the Northern District of Texas denied Viewpointe's motion to move its suit there, and the Charlotte check image archive provider declined to pursue the matter further … Citi withdrew its motion to move its suit to the Southern District of New York after a New York judge endorsed a DataTreasury letter requesting that the case be heard where it was first filed)" Check Technology Case Stays in Texas, IP Law Bulletin, Oct. 13, 2005 (Exhibit J) ("A Texas check imaging company that has rattled money-center banks with sweeping patent litigation has successfully fought back an attempt led by Citigroup to move the case to another jurisdiction").

'007 patent")[5] and United States Patent No. 5,717,868 ("the '868 patent").[6] Neither patent is in USPTO reexamination.

In light of all the foregoing, "staying the case, based solely on speculation of what might possibly happen during reexamination, would be inefficient and inappropriate." *Soverain Software LLC v. Amazon.Com*, 356 F.Supp.2d 660, 663 (E.D. Tex. 2005).

### STATEMENT OF FACTS

This is not a new lawsuit by any definition. The Complaint was filed nearly two years ago - on March 4, 2004. Not only has the case been pending for an extended period of time, but it is also on the downward slope of its tenure on the Court's docket. A final pretrial conference in this case has been scheduled for October 3, 2006.[7] By agreement of the parties, the Court has ordered jury selection to commence on October 10, 2006 (less than eight months hence).

Much more than just the passage of almost two years has transpired in this lawsuit. Consistent with the agreed-to and Court-ordered schedule in the case:

- A motion to dismiss for want of venue and jurisdiction has been filed by SVPCo, fully briefed by the parties, and ruled upon by the Court, with an opinion and order authored and issued;

- Preliminary infringement contentions have been prepared by DataTreasury and transmitted to SVPCo;

- SVPCo has prepared preliminary invalidity contentions, and has transmitted these to DataTreasury;

---

[4] DataTreasury anticipates that the SVPCo witnesses to be deposed during discovery as to the new lawsuit will be similar, if not identical, to those whom DataTreasury will depose on the '988 and '137 litigation.
[5] The '007 patent duly and legally issued on November 23, 1993, with John L. Barnhard, Jr., Thomas K. Bowen, Terry L. Geer, and John W. Liebersbach as the named inventors, for an invention of a central check clearing system.
[6] The '868 patent duly and legally issued on February 10, 1993, with David L. James as named inventor, for an invention with an electronic payment interchange concentrator.
[7] Document 22, Amended Agreed Case Management Order (filed July 27, 2005).

- Initial disclosures have been made by the parties, , including, as SVPCco concedes,[8] comprehensive disclosures by DataTreasury with data on hundreds of individuals with relevant knowledge;

- A motion to compel amended preliminary infringement contentions has been filed by SVPCo and fully briefed by the parties;

- The parties have exchanged proposed terms and claim elements for construction;[9]

- The parties have exchanged preliminary claim constructions and extrinsic evidence;

- Claim construction discovery has closed;

- Meticulous and comprehensive claim construction briefing has been filed by DataTreasury, including a detailed expert affidavit;[10]

- SVPCo's responsive claim construction briefing will be filed tomorrow, February 28, 2005 (if timely filed);

- DataTreasury has filed a motion to consolidate claim construction proceedings in this lawsuit with those in *DataTreasury v. MagTek*, No. 2:03cv-459, just as the Court did earlier with several lawsuits in this same litigation.[11]

In addition to the events detailed above, each representing an investment of significant time and money by the litigants, large-scale discovery exchange has transpired.    SVPCo's characterization of the document exchange in this case as comprising "several thousands of pages" (SVPCo Motion to Dismiss, pg. 4) is, to be charitable, understated.    In fact, DataTreasury has produced some two hundred thirty thousand (230,000) pages of discovery material, and SVPCo has produced about fifty-three thousand (53,000) pages of discovery material thus far – much more than several

---

[8] SVPCo Motion to Stay, pg. 4.
[9] Although SVPCo argues that "many of the terms of the patents-in-suit are in dispute between the parties here" (SVPCo Motion to Stay, pg. 3) the construction on '988 and '137's claims in this case will not be the Court's first encounter with these terms.  The '988 and '137 terms have already been exhaustively construed, parsed and defined as a result of *Markman* proceedings in earlier DataTreasury litigation before the Court.
[10] While SVPCo has not deposed any of DataTreasury's experts, and vice-versa, it is not altogether accurate to say, as SVPCo does, that "there has been no expert discovery"  (SVPCo Motion to Stay, pg. 3) in view of the Hiles expert affidavit and the work it represents.

thousand pages.   Significant resources have been expended by DataTreasury in cataloging and reviewing the discovery materials received, and DataTreasury presumes that the same is true for SVPCo's counsel as to the nearly quarter of a million pages of documents DataTreasury produced.

## ARGUMENT

On this much DataTreasury and SVPCo agree – this Court has the inherent authority to manage its docket.   A district court is vested with concomitant plenary license to deny a litigant's request for stay of suit.   *Viskase Corp. v. Amer. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("the court is not required to stay judicial resolution in view of the reexaminations"); *Soverain Software LLC v. Amazon.Com*, 356 F.Supp.2d 660, 662 (E.D. Tex. 2005); *Landis v. N. Amer. Co.*, 299 U.S. 248, 254 (1936); *NTP, Inc. v. Research In Motion, Ltd.*, 397 F.Supp.2d 785, 787 (E.D. Va. 2005) ("a court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze").

The rule in this district and elsewhere is that the burden of proof and persuasion to establish the need for and propriety of this stay rests squarely with SVPCo, as the party seeking delay.   "The supplicant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."   *Castanho v. Jackson Marine, Inc.*, 484 F. Supp. 201, 209 (E.D. Tex. 1980); *accord IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030 (C.D. Cal. 2005) (internal citations omitted).

---

[11] SVPCo did not file a Response to this Motion within the time allotted by EDTX Local Rule CV-7(e) and the consolidation request (which is not opposed by Magtek) should therefore be deemed unopposed.

While some courts have referenced perceived potential advantages in staying a pending lawsuit where reexamination proceedings are undertaken by the USPTO, a significant number of judicial opinions from across the nation have denied such stays, citing a wide range of disadvantages and inequities.[12]

Various factors have been cited as relevant to a determination whether or not to stay a lawsuit when the USPTO agrees to reexamine a patent-in-suit. These include: (1) whether a stay would unduly prejudice or present a clear tactical advantage to the non-movant; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Soverain Software LLC v. Amazon.Com*, 356 F.Supp.2d 660, 662 (E.D. Tex. 2005).

## I.    The USPTO's Decision to Proceed With Reexamination Has Far Less Import than SVPCo Suggests.

SVPCo intimates that the Court should view the '988 and '137 patents as vulnerable merely because the USPTO has agreed to a reexamination. SVPCo Motion to Stay, pg. 2. Not so. Indeed, SVPCo's **own evidence** shows that requests for reexamination are routinely and in fact almost automatically granted. SVPCo Motion to Stay, Exh. 4. From 1981 to late 2005 the USPTO acted upon more than 7500 reexamination requests. *Id.* Of these, the USPTO agreed to reexamine some **91%**. Thus,

---

[12]*CF NexMed Holdings, Inc. v. Block Investment, Inc.*, 2006 U.S. Dist. LEXIS 3150 (D. Ut. Jan. 19, 2006); *Translogic Tech., Inc. v. Hitachi, Ltd.*, 2005 U.S. Dist. LEXIS 38853 (D. Or. Dec. 13, 2005); *NTP, Inc. v. Research In Motion, Ltd.*, 397 F.Supp.2d 785, 788-89 (E.D. Va. 2005); *Jain v. Trimas Corp.*, 2005 U.S. Dist. LEXIS 28950 (E.D. Cal. Sep. 27, 2005); *IMAX Corp. v. In-Three, Inc.*, 385 F.Supp. 2d 1030 (C.D. Cal. 2005); *Ariad Pharm., Inc. v. Mass. Inst. Of Tech.*, 2005 U.S. Dist. LEXIS 10941 (D. Mass. Jun. 6, 2005); *In Re: Columbia Univ. Patent Litigation*, 330 F. Supp. 2d 12, 15-16 (D. Mass. 2004); *Amphenol T & M Antennas, Inc. v. Centurion Intn'l, Inc.*, 2001 U.S. Dist. LEXIS 13795 (N.D. Ill. Sep. 5, 2001); *Cognex Corp. v. Nat'l Instruments Corp.*, 2001 U.S. Dist. LEXIS 25555 (D. Del. Jun. 29, 2001); *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 407-408 (W.D. N.Y. 1999); *Agar Corp. v. Multi-Fluid, Inc.*, 983 F.Supp. 1126, 1127 (S.D. Tex. 1997); *San Giacomo N.A., Ltd. v. Pilliod Furniture, Inc.*, 1996 U.S. Dist LEXIS 14440 (M.D. N.C. Aug. 13, 1996); *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, 1994 U.S. Dist. LEXIS 4130 (S.D. N.Y. Apr. 6, 1994); *Gladish v. Tyco Toys, Inc.*, 1993 U.S. Dist. LEXIS 20211 (E.D. Cal. Sep. 16, 1993).

in more than 9 out of every 10 instances over the past 24 years, the USPTO has determined that "[t]here are substantial new questions of patentability." SVPCo Motion to Stay, pg. 2 (*citing and quoting* USPTO Reexamination Orders). A grant of reexamination is such a mundane occurrence that no inference can be drawn that a patent as a whole, or any of the patent's component claims, might be invalidated or meaningfully amended by the USPTO.[13] *See, e.g., Hoechst Celanese Corp v. BP Chemicals, Ltd.*, 78 F. 3d 1575, 1584 (Fed. Cir.), *cert. denied*, 519 U.S. 911 (1996) ("grant of a request for reexamination, although surely evidence that the criterion for reexamination has been met … does not establish a likelihood of patent invalidity").[14]

Despite the high number and percentage of USPTO determinations that "[t]here are substantial new questions of patentability," of all the patents reexamined since 1981 at the request of a third party, **the USPTO has confirmed <u>all</u> patent claims in almost 1 out of every 3 instances (29%)**, and changed some claims and left others unchanged in about 6 of every 10 instances (59%). In contrast, the USPTO has canceled all claims in an overwhelming minority of instances – less than 1 in 8 (12%). SVPCo Motion to Stay, Exh. 4. Tempering the exuberant optimism of SVPCo and its fellow infringers, then, are the historical odds. These plainly do not favor the elimination of DataTreasury's claims as a result of reexamination. This reality intrudes harshly on SVPCo's fantasy supposition that "if this Court stays this action until the Reexams are concluded, that

---

[13] Similarly, SVPCo's attempt to draw support from proceedings of the European Patent Office ("EPO") (SVPCo Motion to Stay, pg. 4, n. 5) is misguided. These proceedings, characterized as a "decision" by SVPCo, are anything but. There has been no decision by the EPO, and the action referred to by SVPCo is simply a preliminary opinion of an EPO examiner based on the original unamended claims.
[14] *Accord Output Technology Corp. v. Dataproducts Corp.*, 1991 U.S. Dist. LEXIS 20168, *6 (W.D. Wa. Nov. 25, 1991).

decision may obviate the need for any additional expenditure of time, expense, and effort in resolving this litigation" since "a decision to invalidate the patents-in-suit may result in dismissal or settlement of the litigation."  SVPCo Motion to Stay, pg. 8.

> **II.     The Stay Requested by SVPCo Would Likely Place this Lawsuit in Hiatus for Several Years.**

Key to the reasoning underpinning many of the judicial opinions denying a stay is the inordinate delay endemic to such a measure.  Notwithstanding SVPCo's soothing platitudes about the USPTO's statutory directive to carry out reexaminations with "special dispatch" (SVPCo Motion to Stay, pp. 5, 11-12), the cold hard reality is that the duration of reexamination proceedings is not realistically measured in weeks or even months but in multiple years.  *NexMed Holdings, Inc. v. Block Investment, Inc.*, 2006 U.S. Dist. LEXIS 3150 (D. Ut. Jan. 19, 2006) (observing that granting a stay of suit to await reexamination outcome could forestall lawsuit for up to five years); *Translogic Tech., Inc. v. Hitachi, Ltd.*, 2005 U.S. Dist. LEXIS 38853 (D. Or. Dec. 13, 2005) (district court lifted a stay after three and a half years, "because the reexamination proceedings appeared likely to continue for years" – reexamination proceedings then continued for at least **another** two years thereafter); *NTP, Inc. v. Research In Motion, Ltd.*, 397 F.Supp.2d 785, 788 (E.D. Va. 2005) ("[r]eality and past experience dictate that several years might very well pass from the time when a final office action is issued by the PTO to when the claims are finally and officially 'confirmed' after appeal"); *Amphenol T & M Antennas, Inc. v. Centurion Intn'l, Inc.*, 2001 U.S. Dist. LEXIS 13795, *7 (N.D. Ill. Sep. 5, 2001) ("[w]hat is clear is that there would be a long delay between the time that a stay is granted and the time that the PTO finishes its reexamination proceeding …"); *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 407 (W.D. N.Y. 1999) ("[w]hile the PTO is

directed by statute to conduct reexamination proceedings with "special dispatch" … the procedure would nonetheless involve a lengthy delay").   Thus, SVPCo's request, if granted, would very likely place DataTreasury's lawsuit – and its patent rights – in hiatus for years, to DataTreasury's sole detriment.

     **III.**    **The Alleged Efficiencies and Conservation of Resources SVPCo Posits May Follow From a Stay Will Not Materialize in this Case.**

        **A. The Scope of the Litigation is now Broader than the Two Patents in Reexamination, and Litigation Between the Parties would Continue Even if a Stay were Granted as to the '988/'137 Suit.**

SVPCo and DataTreasury are now in litigation over more than just the '988 and '137 patents.  DataTreasury has filed a second suit for infringement of the '007 and '868 patents as well, and will shortly move the Court to consolidate that lawsuit and this one. Hence, notwithstanding SVPCo's reliance on First Data's reexamination proceedings as a stalking horse to avoid the day of reckoning for its own infringement, SVPCo and DataTreasury will continue to square off as opposing litigants in the Eastern District of Texas even as the '988 and '137 reexamination inches forward.   In circumstances like these, where certain patents in litigation are in reexamination and others are not, a stay is inappropriate.  In *Motorola Inc. v. STMicroelectronics*, E.D.T.X. No. 1:03-cv-0407 (*see* Exhibit L - Order denying Motion to Stay & Order Overruling Objections to Magistrate's Order), Judge Crone denied a motion for stay very similar to that made by SVPCo, citing, *inter alia*, the fact that the litigation entailed additional patents which were not subject to reexamination.  "If the Court stayed this case pending the outcome of the Candelaria Patent, Motorola's other claims would fall to the wayside, pending the outcome of the reexamination by the PTO, which could take several months at minimum."  *Id.* at 4. Thus, SVPCo's gambit to continue with its infringing business activities free and clear of

activities free and clear of DataTreasury's litigation, as the '988 and '137 patents gradually wend their way through the reexamination process, should fail. DataTreasury will not permit the trampling of its intellectual property by SVPCo or by any other defendant in suit, and this Court should not countenance this transparent ploy to forestall responsibility for infringement.

### B. The Prospects for Cancellation of All Claims in '988 and '137 as a Result of Reexamination are Dim.

Even without the ongoing litigation between SVPCo and DataTreasury which follows DataTreasury's recent acquisition of the '007 and '868 patents, many of SVPCo's "streamlining" arguments ring hollow. In fact, most of SVPCo's positions have been rejected by other courts. SVPCo maintains that the 93 separate claims which comprise the '988 and '137 patents could be canceled altogether. SVPCo Motion to Stay, pp. 3, 5, 8. This is a statistically unrealistic proposition, as demonstrated by SVPCo's own evidence and as shown in section I, *supra*. *See also Soverain Software LLC v. Amazon.Com*, 356 F.Supp.2d 660, 662 (E.D. Tex. 2005) ("[w]hile reexamination would substantially simplify this case if the PTO finds that all allegedly infringed claims of any of the patents are cancelled, this historically happens in only 12% of reexaminations requested by a third party"). Moreover, First Data's arguments on reexam are best founded on grounds of obviousness. However, DataTreasury has amassed strong secondary considerations through the many licenses and consent judgments entered and agreed to regarding the validity of the '988 and '137 patents.

Additionally, the scenario SVPCo suggests is highly implausible in light of the wider historical backdrop of this litigation. First Data was not the first infringer to unearth the alleged "prior art" it has advanced to the USPTO. JP Morgan Chase, one of

the five largest banks in the United States and an earlier defendant in the DataTreasury litigation, was represented by Skadden, Arps, Slate, Meagher & Flom, LLP, the largest law firm in the United States employing some 1,750 lawyers. JPMC expended untold millions of dollars in legal fees and expense to pursue "prior art" evidence through dozens of third-party depositions all over the country. The "new" alleged prior art championed by First Data is largely a regurgitation of Skadden's earlier work. That work did not result in a judicial finding of invalidity in favor of JP Morgan Chase. Instead, Skadden – armed with the same alleged prior art now wielded by First Data - ultimately **did not even file a summary judgment motion alleging invalidity of '988 and '137 against DataTreasury.** Rather, JP Morgan Chase wisely settled with DataTreasury, entering a consent judgment **admitting** the validity of '988 and '137 **even in the face of this same alleged prior art**. The same can be said for Ingenico, a defendant which actually filed invalidity summary judgment pleadings, then abandoned this tact in favor of a settlement with DataTreasury and the entry of a consent judgment agreeing that '988 and '137 are valid and enforceable. Invalidity, then, hardly represents an untrodden path in this litigation, and the "prior art" cited by First Data is old news.

SVPCo (and the other infringing defendants who are now filing copycat motions of their own) will doubtless reply "that was them not us." But it defies reason to believe that JP Morgan Chase and Skadden Arps, or Ingenico and Nixon & Vanderhye, would have charted the course they did if this alleged "prior art" remotely resembled a "kill shot." Thus, to the extent that the Court is inclined to handicap the outcome of the USPTO reexamination proceedings in determining whether these will truly "streamline" or obviate the pending litigation, that calculation does not favor a stay.

### C. The Theoretical Possibility that Some Claims in '988 and '137 Might be Amended or Cancelled as a Result of Reexamination Does not Warrant a Stay.

SVPCo is not aided by the argument that even if **all** the claims of '988 and '137 are not invalidated, **some** claims will likely be so dramatically altered as to dictate that the Court stay this lawsuit in the interim. SVPCo Motion to Stay, pp. 3, 6-10. On the contrary, a bevy of opinions addressing this very issue recognize that it is entirely appropriate and indeed advisable to proceed with litigation while reexamination proceedings are pending, rather than place a "live" ongoing lawsuit into hiatus by granting a stay. One such recent case, from this very District, is *Soverain Software LLC v. Amazon.Com*, 356 F.Supp.2d 660, 662 (E.D. Tex. 2005) ("the Court is unwilling to adopt a *per* se rule that patent cases should be stayed during reexamination because some of the relevant claims may be affected. To do so would not promote the efficient and timely resolution of patent cases, but would invite parties to unilaterally derail timely patent case resolution by seeking reexamination. **Some of the claims may change in this case, but the Court is of the opinion that the interests of justice will be better served by dealing with that contingency when and if it occurs, rather than putting this case indefinitely on hold.** Firm trial settings resolve cases and reduce litigation costs") (emphasis added).

Other courts have been similarly recalcitrant to stay litigation merely because reexamination could potentially narrow or change some claims, and have acknowledged that reexamination and litigation can effectively and appropriately proceed simultaneously. As the Federal Circuit has noted, "the awkwardness presumed to result

if the PTO and court reach different conclusions is more apparent than real.[15]  The two

forums take different approaches in determining invalidity and on the same evidence

could quite properly come to different conclusions." *Ethicon, Inc. v. Quigg*, 849 F.2d

1422, 1428 (Fed. Cir. 1988).  This precept has been widely accepted. *See  Translogic*

*Tech., Inc. v. Hitachi, Ltd.*, 2005 U.S. Dist. LEXIS 38853, *9 (D. Or. Dec. 13, 2005)

("[d]istrict courts are not … bound by the Board's [reexamination] rulings, and district

courts are not required to stay litigation under these circumstances"); *Accent Designs,*

*Inc. v. Jan Jewelry Designs, Inc.*, 1994 U.S. Dist. LEXIS 4130 (S.D. N.Y. Apr. 6, 1994)

("the functions of the courts and the Patent Office are very different and are concepts not

in conflict") (internal citations omitted); *Output Technology Corp. v. Dataproducts*

*Corp.*, 1991 U.S. Dist. LEXIS 20168, *5-6 (W.D. Wa. Nov. 25, 1991) (same holding);

*Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F. Supp. 751, 812 (E.D. N.Y.

1995)(ruling that district court was "not bound by the findings of the .. patent

reexamination proceeding, because the proceeding entails a dissimilar record with

different standards of proof than th[e] judicial proceeding"); *Dow Chem. Co. v. Astro-*

*Valcour, Inc.*, 110 F. Supp. 2d 104, 109 (N.D. N.Y. 2000)("[r]eexamination before the

Patent and Trademark Office and litigation in the courts are distinct proceedings. *** The

burden of proving invalidity by clear and convincing evidence remains unchanged,

---

[15] SVPCo relies heavily on just such supposed "awkwardness" as support for its bid to deactivate this litigation – proclaiming that "[i]f this litigation progresses, the parties and this Court will be working to resolve the same issues the PTO is trying to resolve – the scope of the claims of the patents-in-suit and the [alleged] invalidity of those claims." SVPCo Motion to Stay, pg. 6.  But the circumstances of this case and the precedent cited herein teach that (1) SVPCo's predicate assumption – the absolute or complete commonality of issues as between this Court and the USPTO, is off-base and (2) even to the extent that there may be commonality or overlap between the current litigation and the USPTO reexamination, there is nothing improper or ill-advised about such a circumstance, given the intrinsically different nature of the two fora and the mutually exclusive approaches each takes to the invalidity question.

despite any decision of the Patent and Trademark Office"); *Arthrocare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615, 619-20 (D. Del. 2004) (same holding).

One particularly cogent explanation of the propriety of a dual track patent invalidity review was laid out in *In Re: Columbia Univ. Patent Litigation*, 330 F.Supp.2d 12, 15-16 (D. Mass. 2004). "The courts and the PTO take different approaches to examining the validity of a patent. Consequently, the courts and PTO may properly reach different conclusions on the same evidence. The court may also consider different or additional evidence. Perhaps most importantly, the court can consider additional issues … that the PTO either will not or cannot consider. \*\*\* Judicial proceedings are also far more adversarial than re-examination … proceedings before the PTO. \*\*\* **Therefore, judicial proceedings have a significant advantage in reaching a correct result** (internal citations omitted, emphasis added). *See also Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 407-408 (W.D. N.Y. 1999) ("the inquiries of the PTO on reexamination and the issues before the district court in an infringement action are quite distinct. \*\*\* If the district court determines that a patent is not invalid, the PTO will continue its reexamination because the two forums have different standards of proof for determining invalidity, such that the doctrine of collateral estoppel would not bar the PTO's reexamination. On the other hand, if the district court determines that the patent is invalid, and that decision is either upheld on appeal or not appealed, the PTO may discontinue the reexamination, since the district court's order could have res judicata effect …") (internal citations omitted). These cases show that parallel proceedings before the Court and the USPTO are commonplace, and that SVPCo's "efficiency" and "streamlining" arguments miss the mark.

14

### D. The Reexamination Proceedings Will Not Simplify or Eliminate Trial Issues – Various Issues, Including Inequitable Conduct and Invalidity, will Remain Disputed.

*Inequitable Conduct:* In the suit at bar, SVPCo has directly raised at least one defense which cannot be considered by the USPTO during the course of reexamination proceedings as to '988 and '137 – SVPCo "maintains that the '988 and '137 patents are ... unenforceable due to inequitable conduct during prosecution of the patents."[16]  The reexamination proceeding will not finally pretermit all issues here because the USPTO will not resolve claims of inequitable conduct.  In fact, in reexamination proceedings "the examiner will not, under any circumstances, treat or discuss ... arguments or points directed to ... 'inequitable conduct.'"  *Manual of Patent Examining Procedure*, Sec. 1901.06 (8th ed. 2d rev.).

Many courts have highlighted this fact when denying stays. *See, e.g., In Re: Columbia Univ. Patent Litigation*, 330 F. Supp. 2d 12, 15-16 (D. Mass. 2004) (denying stay in part because "most importantly, the [district] court can consider additional issues such as prosecution laches and inequitable conduct that the PTO either will not or cannot consider"); *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030 (C.D. Cal. 2005) (same holding); *Enprotech Corp. v. Autotech Corp.*, 1990 U.S. Dist. LEXIS *2-3 (N.D. Ill. 1990) (denying stay in part because PTO would not resolve claims of inequitable conduct); *San Giacomo N.A., Ltd. v. Pilliod Furniture, Inc.*, 1996 U.S. Dist LEXIS 14440, *6-7 (M.D. N.C. Aug. 13, 1996) (denying stay where defendant had "asserted the unenforceability of the ... patent for inequitable conduct in failing to disclose prior art to

---

[16] Document 11-1, Joint Conference Report, filed Dec. 15, 2004.

the PTO," and thus "the reexamination proceedings, whatever the result, will not resolve all of the issues involved in th[e] case").

*Invalidity:* The USPTO's invalidity analysis is significantly narrower than that which is conducted in a federal district court. *See, e.g., IMAX Corp. v. In-Three, Inc.,* 385 F. Supp. 2d 1030 (C.D. Cal. 2005); *Gladish v. Tyco Toys, Inc.,* 1993 U.S. Dist. LEXIS 20211 (E.D. Cal. Sep. 16, 1993) (court concluded it was "the only forum for complete consideration of evidence ... of invalidity" because invalidity was asserted on more grounds than prior publications and patents, the only grounds that the USPTO will consider during reexamination.) Although SVPCo has not yet filed any invalidity summary judgment motion, and it is thus unknown whether the Court will be called upon to rule on invalidity arguments which are broader than those the USPTO is empowered to consider, neither has SVPCo foresworn any such attack on the presumed validity of '988 and '137. Because the standards for assessing invalidity are different before this Court and the USPTO, SVPCo is not bound by a decision of the USPTO that the prior art references advanced by First Data in the reexamination requests do not invalidate '988 and '137. Hence the Court may properly presume that SVPCo will or may defend itself by interposing invalidity defenses which the USPTO neither can or will consider as part of the reexamination proceeding. This consideration also militates against any stay.

Indeed, even though SVPCO now seeks to wield the newly minted reexamination proceedings as a sword – indefinitely forestalling the litigation which will prove SVPVCo's liability for infringement - SVPCo is not even willing to commit to this Court that it will accept or abide by the results of the USPTO reexamination once the litigation finally emerges from the hibernation which SVPCo seeks. This startling attempt to use

the reexamination as a basis for a stay, yet simultaneously avoid any preclusive effect from the outcome of the reexamination appears early on in SVPCo's Motion to Stay – "[b]ecause SVPCo did not submit the Requests [for reexamination] and is not participating in the Reexams, SVPCo hereby reserves its rights to continue challenging the validity of the patents-in-suit if necessary in this litigation." SVPCo Motion to Stay, pg. 2.

In one breath SVPCo touts the reexamination as the "end all/be all" of invalidity analysis – indeed, one topic heading in bold typeface and a full two pages of text in SVPCo's Motion to Stay trumpet "the expertise of the PTO in evaluating prior art." SVPCo Motion to Stay, pp. 10-11.[17] Yet in the next breath (albeit in small print and relegated to a footnote) SVPCo tells the Court that it is hedging its bets by reserving for itself yet another bite at the invalidity apple in two, five or ten years when the reexamination process is eventually finalized. Presumably, if "the PTO's expertise in evaluating patents and prior art" chances to result in a determination adverse to SVPCo's interests, and more along the lines of the determination JP Morgan Chase reached after it pursued and reviewed all the alleged "prior art" and decided not to move for invalidity summary judgment, SVPCo's admiration for and advocacy on behalf of the PTO's expertise in these matters will plummet. This fence straddling is telling, and it cuts deeply against the grain of SVPCo's efficiency arguments.

---

[17] Some courts have indeed considered technical experience of the USPTO's examiners as a factor favoring stay. This seems somewhat ironic, since the entire point of a reexamination is to critically review the work originally accomplished by one of these same "technically experienced" examiners. In any event, that factor should be attributed only minimal weight in a case like this one. The Court is experienced in patent litigation matters, has considerable exposure to and familiarity with these particular patents as a result of the earlier course of the litigation, which included *Markman* hearings and a claim construction ruling, and enjoys the aid and support of a technical advisor / special master who has developed significant expertise already as to these very patents. Indeed, given the mature state of the DataTreasury litigation, it will be the

Parties seeking stays premised upon reexamination proceedings sometimes offer to be bound by the USPTO's validity determination. *See, e.g., Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 1987 U.S. Dist. LEXIS 15033, *11 (N.D. Ill. Feb. 2, 1987) ("… if the patent does survive the reexamination proceedings, the defendant has assured the Court that it will not contest the issues decided by the PTO …" SVPCo is not only refraining from offering the Court any such assurance, but is unambiguously telling the Court that even if all claims of the '988 and '137 patents are found valid upon reexamination, SVPCo – having forced this case off the Court's docket and then continued with its infringing business activities for however long the reexamination takes – still intends to conduct invalidity discovery, briefing, and potentially even mount an invalidity defense.[18] This is hardly good stewardship of the Court's resources.

SVPCo makes the peculiar argument that the sheer **number** of claims it is alleged to infringe - 93 – (separate and apart from those implicated by the new suit alleging SVPCo's infringement of the'007 and '868 patents) somehow argues **for** a stay pending USPTO reexamination. SVPCo Motion to Stay, pp. 9-10. The reverse is true. The large number of claims which SVPCo infringes, coupled with the statistical and historical high probability that not all those claims – if any of them - will be invalidated, is indicative that the reexaminations will **not** "obviate the need for any additional expenditure of time, expense, and effort in resolving this litigation." SVPCo Motion to Stay, pg. 8. Rather, "[a]fter the reexamination, the parties would be right back in this court." *Gladish v. Tyco Toys, Inc.*, 1993 U.S. Dist. LEXIS 20211, *7 (E.D. Cal. Sep. 16, 1993).

---

USPTO which is at a technical disadvantage in this particular case. There is therefore no need to defer to or rely upon any alleged USPTO expertise.

Contrary to SVPCo's allegation that the reexamination **must** significantly impact this litigation, "it is unclear whether the PTO's reexamination of the … patent would affect litigation in the present suit.  On the one hand, the PTO may not modify the … patent, in which case the parties would be in the same position at the end of the reexamination process as they are now.  On the other hand, some of the … patent's claims could be altered in a way favorable to [the alleged infringer], but this result might have only a minimal effect on the pending litigation.  For example, the court could eventually grant [defendant's] motion for partial summary judgment as to invalidity of precisely the same claims that the PTO altered in [defendant's] favor.  In that case, the PTO's actions would be immaterial in their impact to this litigation."  *Amphenol T & M Antennas, Inc. v. Centurion Intn'l, Inc.*, 2001 U.S. Dist. LEXIS 13795, *6 (N.D. Ill. Sep. 5, 2001).

### IV.    Under the Circumstances Present Here, an Indefinite Delay of this Lawsuit would be Unconscionable.

Among its other deficiencies, SVPCo's Motion to Stay comes way too late.  This case is more than two-thirds of the way over.  The Complaint was filed almost two years ago, and jury trial has been scheduled to commence in less than eight months.  "Where a stay will forestall the trial date agreed upon by the parties" – as the stay SVPCo requests indisputably will – courts "ha[ve] required the party requesting the stay to make a showing  of a clear case of hardship or inequity before the Court can enter a stay order." *Cognex Corp. v. Nat'l Instruments Corp.*, 2001 U.S. Dist. LEXIS 25555, *4 (D. Del. Jun. 29, 2001), *citing and quoting, inter alia, Dentsply Intn'l, Inc. v. Kerr Mnfg. Co.*, 734 F.

---

[18] Even had SVPCo volunteered to be bound by the outcome of the USPTO reexamination of '988 and '137, instead of expressly disavowing such an outcome, this would only address one of several reasons the stay motion should be rejected.

Supp. 656, 658 (D. Del. 1990).  This SVPCo plainly has not done, and cannot do.  The hardship or inequity it claims it will suffer is "run-of-the-mill." Nothing about the circumstances at bar distinguishes this case from any other case wherein a reexamination is pursued.  On the contrary, here, as in *Agar Corp. v. Multi-Fluid, Inc.*, 983 F.Supp. 1126, 1128 (S.D. Tex. 1997), "[a]lthough the discovery stage has not yet been completed, it has also not just begun.  Thus, this case could be considered to be in its later stages of litigation, and granting a stay to allow the Defendant to await a reexamination would not be justified."

Moreover, the USPTO reexamination proceedings, whatever their result and whenever they finally culminate, will not resolve all of the issues involved in this lawsuit. *Compare Gladish v. Tyco Toys, Inc.*, 1993 U.S. Dist. LEXIS 20211, *6-7 (E.D. Cal. Sep. 16, 1993) – "[t]he reexamination proceeding will not finally resolve all issues in the litigation. *** Two additional issues would remain [unless all patent claims were cancelled]: (1) infringement, and (2) whether the case is exceptional such that defendants are entitled to fees and costs.  Accordingly, issuance of a stay pending reexamination would not serve Congress' intent of simplifying the issues and reducing the complexity of the trial.  After the reexamination, the parties would be right back in this court."

Lastly, SVPCo's contention that the reexamination process and the litigation stay will be "brief" - whether honestly believed or merely a product of lawyerly dissimulation – is flatly wrong, as demonstrated in section II above.  Unless DataTreasury prevails completely in the initial USPTO reexamination process (a prospect we do not discount, since **all claims** emerge unscathed in 29% of reexaminations initiated by third parties), the full process will drag on for many years.  Even **if** all 93 claims are promptly

confirmed following reexamination, the **average** time just to reach that point is **almost two years** (21.9 months). Moreover, the delay attendant to reexamination can also be exponentially expanded by further reexamination requests. Even if the Court stays this action pending the current reexamination proceedings there is nothing to prevent SVPCo, another defendant, or some other third party from filing further reexamination requests, and further dragging out the stay. In addition, SVPCo's claim that the stay it requests would not be a "protracted" one is misleading. Patent litigation, as much or more so than other forms of lawsuit, is heavily reliant on inertia. A sudden stoppage of this lawsuit will not be automatically reversed by the lifting of a stay in a few months or several years. The time needed for the litigants, experts, witnesses and Court to re-engage and to come back up to speed on the facts and issues of the case – including those which are wholly unaffected by the reexamination – will be significant. This reality of a stay will inevitably add significant expense to the litigation.

During the extended time period of the stay SVPCo requests, memories will surely fade, key witnesses will move and change employment, documents will be lost or destroyed, and SVPCo will continue and even expand its infringing business activities.

## <u>CONCLUSION</u>

No stay should be granted in this case. Application of the relevant factors to the circumstances at bar dictate a rejection of the Defendant's bid to stay this lawsuit and thereby further evade responsibility for the infringing acts for which DataTreasury seeks redress.

Respectfully submitted,


_____/s/_____ ANTHONY K. BRUSTER
EDWARD L. HOHN
Texas Bar No. 09813240
edhohn@nixlawfirm.com
D. NEIL SMITH
Texas Bar No. 00797450
dnsmith@nixlawfirm.com
NIX, PATTERSON & ROACH, LLP
205 Linda Drive
Daingerfield, Texas 75638
Telephone:  903.645.7333
Facsimile:   903.645.4415

C. CARY PATTERSON
Texas Bar No. 15587000
ANTHONY K. BRUSTER
Texas Bar No. 24036280
akbruster@nixlawfirm.com
BRADY PADDOCK
Texas Bar No. 00791394
bpaddock@nixlawfirm.com
R. BENJAMIN KING
Texas Bar No. 24048592
benking@nixlawfirm.com
NIX, PATTERSON & ROACH, LLP
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
Telephone: 903.223.3999
Facsimile:  903.223.8520

JOE KENDALL
Texas Bar No. 11260700
jkendall@provostumphrey.com
KARL RUPP
Texas Bar No. 24035243
krupp@provostumphrey.com
PROVOST UMPHREY, LLP
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
Telephone: 214.774.3000
Facsimile:   214.744.3015

22

ROD COOPER
Texas Bar No. 90001628
rcooper@cooperiplaw.com
**THE COOPER LAW FIRM**
545 E. John Carpenter Fwy., Suite 1460
Irving, Texas 75062
Telephone: 972.831.1188
Facsimile:  972.692.5445

ERIC M. ALBRITTON
Texas Bar No. 00790215
ema@emafirm.com
**ALBRITTON LAW FIRM**
P. O. Box 2649
Longview, Texas 75606
Telephone: 903.757.8449
Facsimile:  903.758.7397

T. JOHN WARD, JR.
Texas Bar No. 00794818
jw@jwfirm.com
**LAW OFFICES OF T. JOHN WARD, JR. PC**
P. O. Box 1231
Longview, Texas 75606
Telephone: 903.757.6400
Facsimile:  903.757-2323

**ATTORNEYS FOR PLAINTIFF
DATATREASURY CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

document was served on all counsel of record on the 27th day of February, 2006.

_____/s/_____
**ANTHONY K. BRUSTER**