# EXHIBIT "D"

## *Patent Infringement Win Has Implications for Check 21 Implementation*

### The Green Sheet, July 28, 2005

For payment processor DataTreasury Corp. of Melville, N.Y., a company involved in several patent infringement disputes, the first week of July 2005 was full of events that have potential implications for the Check Clearing for the 21st Century Act, or Check 21. On July 1, a federal judge in Texas granted two consent judgments in favor of DataTreasury in its lawsuits against JPMorgan Chase & Co. and former defendant BankOne, which JPMorgan Chase now owns.

Following that news, DataTreasury announced on July 6 that it will pursue patent infringement litigation against four major U.S. banks, including Bank of America Corp. (BofA), Citigroup, Wachovia Corp. and Wells Fargo Bank & Co. DataTreasury filed suit in U.S. District Court, Eastern District of Texas.

At issue is enforcement of two patents owned by DataTreasury for technology developed by the company's Chief Executive Officer and founder, Claudio Ballard. The technology enables the implementation of Check 21, enacted in October 2004. Check 21 makes it possible for banks to truncate checks, turning them from paper-based documents into electronic images for processing (see "Check 21 and Another Patent Infringement Lawsuit," The Green Sheet, Dec. 27, 2004, issue 04:12:02).

Ballard founded his company in 1998, based on patent applications he had filed for DataTreasury's Global Repository Platform, a system that manages image capture, centralized processing and electronic storage of document and check information.

The company received U.S. Patent Nos. 5,910,988 and 6,032,137 in 1999 and 2000, respectively. In 2002, well before Check 21 became law, DataTreasury filed suit against several payments companies including JPMorgan Chase, First Data Corp., Ingenico Corp., Affiliated Computer Services Inc. (ACS) and RDM Corp., for patent infringement.

DataTreasury filed its initial lawsuits for protection of what it claimed, and the federal court recently agreed, is its property. The ability to license the technology is a key factor in the company's business model and success, and is especially critical now that Check 21 is on the books.

According to DataTreasury, each year BofA processes 9.4 billion checks; Citigroup processes 2.4 billion; Wachovia processes 4.5 billion; and Wells Fargo processes 3.7 billion checks. JPMorgan Chase processed 1.5 billion checks in 2003.

The consent judgments announced in early July explicitly state that DataTreasury's patents are valid and enforceable. JPMorgan Chase, which opted to settle with

DataTreasury in the infringement suit, is now a DataTreasury licensee. Current defendants, take heed.

"We hope that these new defendants realize that long and expensive litigation is definitely not in the best interest of their shareholders," said DataTreasury lead attorney Ed Holm. "It is now clear that DataTreasury's patents are not only valid and enforceable, but have also gained commercial acceptance in the banking industry."

So far, DataTreasury has been successful in its attempts to go after patent infringers. It has entered into licensing agreements with some companies, and at least one company, ACS, is permanently barred from ever using its technology.

In June 2003, DataTreasury granted RDM a nonexclusive worldwide license for use on a per-click royalty basis.

Two years later, in June 2005, DataTreasury entered into a settlement and license agreement with NetDeposit Inc., a company that provides Check 21 and franchise-building software for the financial services industry.

DataTreasury is currently preparing to take First Data and Ingenico to trial to resolve its claims against them; it has refiled its claims against Viewpointe Archive, a check-image archiving provider founded by JPMorgan Chase.

Will DataTreasury eventually "own" Check 21? The JPMorgan Chase settlement indicates that the company does control check imaging technology, but long-term implications for banks and existing services such as ATMs are unclear. Some analysts believe that many financial institutions could be compelled to pay licensing fees to DataTreasury, depending on how the scope of its patents is interpreted and enforced in the future.